**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **Constellation Enterprises LLC** *et al.*,[1] | ) | **Case No. 16-_____ (____)** |
| | ) | |
| Debtors. | ) | **Joint Administration Pending** |
| | ) | |

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING, BUT
NOT DIRECTING, DEBTORS TO PAY CERTAIN PREPETITION (I) WAGES,
SALARIES AND OTHER COMPENSATION, (II) REIMBURSABLE EMPLOYEE
EXPENSES, AND (III) EMPLOYEE MEDICAL AND SIMILAR BENEFITS;
AND (B) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR ALL
RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors")

hereby file this motion (the "Motion") for entry of interim and final orders, substantially in the

forms attached hereto as Exhibit A and Exhibit B, (a) authorizing, but not directing, the Debtors

to pay in the ordinary course of business certain prepetition (i) wages, salaries and other

compensation, (ii) reimbursable employee expenses, and (iii) employee medical and similar

benefits; and (b) authorizing financial institutions to receive, process, honor and pay all checks

presented for payment and electronic payment requests relating thereto.   In support of this

Motion, the Debtors incorporate the statements contained in the *Declaration of Timothy B.

Stallkamp in Support of First Day Motions* (the "Stallkamp Declaration") filed

contemporaneously herewith, and respectfully state as follows:

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each
of the debtors, where applicable are:  Constellation Enterprises LLC (9571); JFC Holding Corporation (0312); The
Jorgensen Forge Corporation (1717); Columbus Holdings Inc. (8155); Columbus Steel Castings Company (8153);
Zero Corporation (0538); Zero Manufacturing, Inc. (8362); Metal Technology Solutions, Inc. (7203); Eclipse
Manufacturing Co. (1493); and Steel Forming, Inc. (4995).  The debtors' mailing address is located at 50 Tice
Boulevard, Suite 340, Woodcliff Lakes, NJ  07677.

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 363, 507(a)(4)-(5), 541, 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

### A.      General Background

3.      On May 16, 2016 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases").  The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Additional information regarding the Debtors' business and the background relating to events leading up to the Chapter 11 Cases can be found in the Stallkamp Declaration.  As of the date hereof, no trustee, examiner or official committee of unsecured creditors has been appointed in the Chapter 11 Cases.

### B.      The Debtors' Workforce

4.      The Employees and Independent Contractors (each as hereinafter defined) are essential to the Debtors' business operations and perform a variety of critical functions.  The Employees' and Independent Contractors' valuable skill sets, institutional knowledge and understanding of the Debtors' operations and customer relations and their integrated functions and activities, make all of the categories of Employees and Independent Contractors essential to the success of these Chapter 11 Cases.

2

5.     Further, just as the Debtors depend on the Employees and Independent Contractors to operate, the Employees and Independent Contractors depend on the Debtors for their livelihood.  The Employees and Independent Contractors would be exposed to significant financial difficulties if the Court were to deny the Debtors the authority to pay in full the unpaid compensation and benefits and reimburse expenses in the ordinary course of business.

6.     Columbus Steel Castings Company ("CSC"), Steel Forming, Inc. (d/b/a Commercial Metal Forming) ("CMF"), The Jorgensen Forge Corporation ("JFC") and Zero Manufacturing, Inc. ("Zero" and together with CSC, CMF and JFC, the "Opco Debtors") are operating companies with Employees and Independent Contractors.  The other Debtors (the "Holding Company Debtors") do not have any Employees or Independent Contractors.

*a.     Columbus Steel Castings Company*

7.     Prior to April 20, 2016, CSC had 752 full-time employees, 2 part-time employees (collectively, the "CSC Employees") and 2 independent contractors (the "CSC Independent Contractors").  The CSC Independent Contractors provided sales services.  The CSC Employees were located at CSC's operations in Ohio.

8.     On April 20, 2016, in compliance with its obligations under the Worker Adjustment and Retraining Notification Act, CSC distributed a notice of termination of operations to the CSC Employees.  Beginning on May 9, 2016, CSC's operations began to transition to an idle state.  As of the Petition Date, CSC has approximately 23 employees.  A total of 62 employees have been terminated and approximately 669 employees have been laid off from the company.

RLF1 14444161v.6

       *b.*     *Steel Forming, Inc. (d/b/a Commercial Metal Forming)*

9.      CMF has 164 full-time employees, 2 interns (collectively, the "<u>CMF Employees</u>") and 3 independent contractors (the "<u>CMF Independent Contractors</u>" and together with the CSC Independent Contractors, the "<u>Independent Contractors</u>").  The CMF Independent Contractors provide sales and information technology consulting services.  The CMF Employees are located at CMF's operations in California, Ohio and Texas.

       *c.*     *The Jorgensen Forge Corporation*

10.      JFC has 103 full-time employees and 2 part-time employees (collectively, the "<u>JFC Employees</u>").  Five of the full-time employees are retained through employment agencies.  The JFC Employees are located at JFC's operations in Washington.

       *d.*     *Zero Manufacturing, Inc.*

11.      Zero has 156 full-time employees and 5 part-time employees (collectively, the "<u>Zero Employees</u>" and together with the CSC Employees, the CMF Employees and the JFC Employees, the "<u>Employees</u>").  The Zero Employees are located at the Zero's operations in Utah.

## C.   <u>Employee Obligations</u>

12.      The Opco Debtors have various compensation obligations with respect to the Employees and the Independent Contractors (collectively, the "<u>Employee Compensation Obligations</u>"), as set forth below in Section C.i. of this Motion.

### i.    **Employee Compensation**

       *a.*     *Columbus Steel Castings Company*

13.      Of the CSC Employees, 445 of the employees are paid on an hourly basis and 86 of the employees are paid salaries.  All of the CSC Employees were paid bi-weekly.  Prior to May 9, 2016, the aggregate gross bi-weekly payroll to the CSC Employees was approximately

$550,000.00 (the "CSC Payroll Obligations").  The CSC Payroll Obligations are managed and administered through a third party payroll processor OneSource Employee Management.  CSC pays a fee equal to 8.3 percent of gross payroll each pay period to OneSource Employee Management for the administration of payroll.

14.      The CSC Independent Contractors are paid monthly by CSC via check.  At this time, the average aggregate monthly amount owed to the CSC Independent Contractors is $0.00 (the "CSC Independent Contractor Obligations").

15.      CSC estimates that, as of the Petition Date, $875,000.00 on account of the CSC Payroll Obligations, including third-party processor costs, and $0.00 on account of the CSC Independent Contractor Obligations have accrued and remain unpaid.  The Debtors seek authorization to pay all such amounts.

   b.      *Steel Forming, Inc. (d/b/a Commercial Metal Forming)*

16.      Of the CMF Employees, 105 of the employees are paid on an hourly basis and 59 of the employees are paid salaries.  The state of Ohio pays 50 percent of the two interns' wages.  All of the CMF Employees are paid bi-weekly.  The aggregate gross bi-weekly payroll to the CMF Employees is approximately $332,000.00 (the "CMF Payroll Obligations").  The CMF Payroll Obligations are managed and administered through a third party payroll processor SinglePoint.  CMF pays $36,000.00 annually to SinglePoint for the administration of payroll, and such obligation is due in August 2016.  CMF prefunds payroll by providing such amount to SinglePoint prior to the Employees' official payday.  In order to meet the next official payday, CMF needs to provide approximately $325,000.00 to SinglePoint on May 19, 2016.

17.      Certain of the CMF Employees with the title of Inside Sales Consultant or Outside Sales Consultant are eligible to receive commissions (the "CMF Commission Obligations").  Three CMF Independent Contractors are paid weekly, 1 CMF Independent

Contractor is paid bi-weekly and 1 CMF Independent Contractor is paid monthly.  SinglePoint manages and administers the CMF Commission Obligations.  The average aggregate monthly amount paid to the CMF Independent Contractors is approximately $12,000.00 (the "CMF Independent Contractor Obligations").  SinglePoint does not manage or administer the CMF Independent Contractor Obligations.

18.     CMF estimates that, as of the Petition Date, $325,000.00 on account of the CMF Payroll Obligations, $45,334.00 on account of the CMF Commission Obligations and $9,045.00 on account of the CMF Independent Contractor Obligations have accrued and remain unpaid.  The Debtors seek authorization to pay all such amounts.

c.     *The Jorgensen Forge Corporation*

19.     Of the JFC Employees, 73 of the employees are paid on an hourly basis and 2 of the employees are paid salaries.  Five of the JFC Employees are retained through employment agencies, and JFC compensates the employment agencies for providing those employees (the "JFC Employment Agencies Obligation").  All of the JFC Employees are paid bi-weekly.  The aggregate gross bi-weekly payroll to the JFC Employees is approximately $348,000.00 (the "JFC Payroll Obligations").  The JFC Payroll Obligations are managed and administered through a third party payroll processor Paycom.  JFC pays $1,232.00 each pay period to Paycom for the administration of payroll.

20.     Eleven of the JFC Employees are eligible to receive commissions (the "JFC Commission Obligations").  Paycom manages and administers the JFC Commission Obligations.

21.     JFC estimates that, as of the Petition Date, $121,740.00 on account of the JFC Employment Agencies Obligation, $577,600.00 on account of the JFC Payroll Obligations and $9,386.79 on account of the JFC Commission Obligations have accrued and remain unpaid.  The Debtors seek authorization to pay all such amounts.

6

          d.       *Zero Manufacturing, Inc.*

22.     Of the Zero Employees, 124 of the employees are paid on an hourly basis and 37 of the employees are paid salaries.  All of the Zero Employees are paid bi-weekly.  The aggregate gross bi-weekly payroll to the Zero Employees is approximately $276,000.00 (the "Zero Payroll Obligations").  The Zero Payroll Obligations are managed and administered through a third party payroll processor Paychex.  Zero pays $692.00 each pay period to Paychex for the administration of payroll.

23.     Certain Zero Employees are eligible to receive commission (the "Zero Employee Commission Obligations").  Paychex manages and administers the Zero Employee Commission Obligations.  Certain Zero Employees with the title of sales representative are eligible to receive commission (the "Zero Sales Representative Commission Obligations" and together, with the Zero Employee Commission Obligations, the "Zero Commission Obligations").  The company directly pays the Zero Sales Representative Commission Obligations via check.

24.     Zero estimates that, as of the Petition Date, $450,000.00 on account of the Zero Payroll Obligations and $96,000.00 on account of the Zero Commission Obligations, have accrued and remain unpaid.  The Debtors seek authorization to pay all such amounts.

25.     Accordingly, the Debtors seek authority to pay $2,500,060.79 on account of Employee Compensation Obligations related to periods prior to the Petition Date.

**ii.    Deductions and Withholdings**

26.     The Opco Debtors deduct from the Employees' and Independent Contractors' paychecks[2] the amounts necessary to satisfy local, state and federal withholding and payroll-

---

[2] Certain of the Debtors' Employees are paid via direct deposits.  For the avoidance of doubt, as used in this Motion, the term "paycheck" encompasses direct deposits and all other forms of payment through which the Debtors satisfy their payroll obligations.

related or similar taxes.  The Opco Debtors seek authorization to pay any and all such amounts. In addition, the Opco Debtors deduct from the Employees' paychecks amounts necessary to satisfy the various benefits plans, insurance programs, and other similar programs and plans (set forth in Section D. below in greater detail).  CSC, in addition to the above-mentioned costs, deducts from CSC Employees the costs for certain uniform, safety boots and bus passes provided to the CSC Employees.  The Debtors seek authorization to pay to any and all such amounts.

### iii.    Honoring Checks for, and Payment of, Reimbursable Expenses

27.    CSC reimburses its employees' traditional business-related travel expenses (for meals, transportation, and lodging) and expenses incurred for the purchase of office supplies, maintenance and subscription services.  CSC believes that, as of the Petition Date, $15,000.00 remain outstanding on account of these reimbursable expenses.  The Debtors seek authorization to pay all such amounts.

28.    CMF reimburses its employees' traditional business-related travel expenses (for meals, transportation, and lodging) through a PEX card program.  CMF believes that, as of the Petition Date, $5,223.80 remains outstanding on account of these reimbursable expenses.  The Debtors seek authorization to pay all such amounts.

29.    JFC Debtor reimburses its employees' traditional business-related travel expenses (for meals, transportation, and lodging).  JFC believes that, as of the Petition Date, $10,300.00 remains outstanding on account of these reimbursable expenses.  The Debtors seek authorization to pay all such amounts.

30.    Zero reimburses its employees' traditional business-related travel expenses (for meals, transportation, and lodging) and tuition, if certain criteria are met.  Zero believes that, as of the Petition Date, $4,000.00 remains outstanding on account of these reimbursable expenses. The Debtors seek authorization to pay all such amounts.

31.     Accordingly, the Debtors seek authority to pay $63,674.80 on account of reimbursable expenses related to periods prior to the Petition Date

### iv.     Prepetition Bonus and Incentive Plans

32.     CSC does not maintain a bonus plan.

33.     CMF maintains a bonus plan for all salaried employees except those employees eligible to earn commissions.  The chief executive officer's employment contract provides for certain incentive compensation in connection with the sale of the company.  By this Motion, the Debtors are not seeking to continue or honor any prepetition obligations owed pursuant to such bonus plan or contract.

34.     JFC maintains a discretionary bonus plan for the chief executive officer.  By this Motion, the Debtors are not seeking to continue or honor any prepetition obligations owed pursuant to such bonus plan.

35.     Zero maintains a discretionary EBITDA-based bonus plan for executives and directors.  By this Motion, the Debtors are not seeking to continue or honor any prepetition obligations owed pursuant to such bonus plan.

## D.     Employee Benefits

36.     The Opco Debtors offer their Employees the opportunity to participate in the various benefit programs (collectively, the "Employee Benefits Programs"), as set forth in this Section D.

### a.     Columbus Steel Castings Company

37.     Workers' Compensation.  CSC maintains a workers' compensation benefits plan with PEO OneSource Employee Management.  The annual cost of the plan is approximately $2,490,000.00, which is 8.3 percent of CSC's gross wages.  As of the Petition Date, CSC estimates that it owes no amounts in connection with this benefits plan.

9

38.    <u>Paid Leave</u>.  Historically, CSC has cashed out accrued and unused paid time off and vacation of its employees upon their termination.  CSC estimates that, as of the Petition Date, approximately $677,993.70 is outstanding with respect to such obligations.  By this Motion, the Debtors are not seeking authority to pay such amounts.

39.    <u>Medical Insurance</u>.  CSC offers a medical insurance plan provided by Medova Healthcare to CSC Employees.  This medical insurance plan is self-insured.  When engaging in regular operations, CSC pays $320,000.00 in premiums each month for this medical insurance plan.  Of that $320,000.00, the insured CSC Employees contribute $92,640.00 each month, which is deducted from their paychecks each pay period.  CSC estimates that, as of the Petition Date, approximately $310,000.00[3] is outstanding with respect to this medical insurance plan.  The Debtors seek authority to pay such amounts.

40.    CSC offers a dental insurance plan provided by United Healthcare.  When engaging in regular operations, CSC pays $17,000.00 in premiums each month for this dental insurance plan.  Of that $17,000.00, the insured CSC Employees contribute $4,302.00 each month, which is deducted from their paychecks each pay period.  CSC estimates that, as of the Petition Date, approximately $17,000.00 is outstanding with respect to this dental insurance plan.  The Debtors seek authority to pay such amounts.

41.    CSC offers a vision insurance plan provided by Fidelity Insurance/Eyemed.  When engaging in regular operations, CSC pays $2,732.00 in premiums each month for this vision insurance plan.  Of that $2,732.00, the insured CSC Employees contribute the entire amount, which is deducted from their paychecks each pay period.  CSC estimates, that as of the

---

[3] The amount outstanding with respect to CSC's medical insurance plan provided by Medova Healthcare is less than the usual monthly premium due to employee terminations, attrition and no new hires since February 1, 2016.

Petition Date, approximately $2,732.00 is outstanding with respect to this vision insurance plan. The Debtors seek authority to pay such amounts.

42.     CSC estimates that, as of the Petition Date, approximately $329,732.00 is outstanding with respect to the above-described medical insurance plans.

43.     <u>Life Insurance and Similar Plans</u>.  CSC offers the CSC Employees various life insurance and related programs, including:  (i) basic life insurance, (ii) optional life insurance, (iii) accidental death and dismemberment insurance, (iv) long term disability insurance and (v) whole life insurance (collectively, the "<u>Life Insurance Plans</u>").  Unum Group provides such plans.

44.     Annually, when engaged in regular operations, CSC pays $139,835.00 for the Life Insurance Plans.  Of that $139,835.00, the insured CSC Employees contribute $9,881.00 each month, which is deducted from their paychecks each pay period.  CSC estimates that, as of the Petition Date, approximately $21,400.00 is outstanding with respect to the Life Insurance Plans.  The Debtors seek authority to pay such amounts.

45.     <u>Employee-Paid Plans</u>.  CSC offers certain supplemental and whole life insurance plans for CSC Employees.  The premiums for these plans are funded completely by CSC Employees.  CSC pays certain costs for the administration of these programs.  CSC estimates that, as of the Petition Date, approximately $65,860.16 is outstanding with respect to CSC's obligations under these programs.  The Debtors seek authority to pay such amounts.

46.     <u>401(k) Retirement Plan</u>.  CSC maintains a 401(k) plan.  CSC does not match CSC Employees' contributions.  As of the Petition Date, CSC believes no amounts are owed on account of the 401(k) plan.

RLF1 14444161v.6

b.      *Steel Forming, Inc. (d/b/a Commercial Metal Forming)*

47.      <u>Workers' Compensation</u>.   CMF maintains a bonded workers' compensation benefits plan with Lockton Companies Inc.  The annual cost of the plan is approximately $241,426.00.  Payments for the plan are made bi-annually in January and June.  CMF estimates that, as of the Petition Date, no amounts are outstanding with respect to this plan.

48.      <u>Paid Leave</u>.  Historically, CMF has provided its employees with vacation and paid time off and has cashed out accrued and unused vacation and paid time off for its employees upon their termination.  CMF estimates that, as of the Petition Date, approximately $276,320.83 is outstanding with respect to such obligations in relation to hourly employees.  By this Motion, the Debtors seek authority to continue this vacation and paid time off policy and to cash out any accrued and unused vacation and paid time off to any employee that is terminated.

49.      <u>Medical Insurance</u>.   CMF offers medical insurance plans provided by United Healthcare to CMF Employees (and twelve retired hourly workers) located in Ohio and Texas and medical insurance plans provided by Kaiser Permanente to CMF employees located in California.   CMF pays approximately $64,000.00 in premiums each month for these medical insurance plans.  Each insured CMF Employee contributes a set monthly amount, ranging from $50.00 to $260.00, based on the number of family members included in the particular medical insurance plan and the plan elected.  CMF estimates that, as of the Petition Date, approximately $375,041.00 is outstanding with respect to these medical insurance plans.  The Debtors seek authority to pay such amounts.

50.      <u>Life Insurance and Similar Plans</u>.  CMF offers the CMF Employees various life insurance and related programs, including:  (i) term life insurance (including accidental death and dismemberment insurance), (ii) voluntary term life insurance, (iii) voluntary critical illness insurance, (iv) short term disability insurance and (v) long term disability insurance.  Reliance

12

Life Insurance and The Hartford Financial Services Group, Inc. provide such plans.  CMF pays annually $107,188.92 for these life insurance and other plans.  CMF estimates that, as of the Petition Date, no amounts are outstanding with respect to these obligations.

51.    <u>401(k) Retirement Plan</u>.  CMF maintains a 401(k) plan.  CMF does not provide matching contributions.  CMF estimates that, as of the Petition Date, no amounts are outstanding with respect to the 401(k) plan.

52.    Additionally, in the ordinary course of business, CMF makes periodic contributions to a frozen pension plan that it maintains for certain covered CMF Employees and former employees (the "<u>CMF Pension Plan</u>") in accordance with the CMF Pension Plan's documents and applicable law.  For hourly employees, participation in the CMF Pension Plan was frozen in 2007.  For salaried employees, participation in the CMF Pension Plan was frozen in 2006.  By this Motion, the Debtors are not seeking authority to make any contributions to the CMF Pension Plan.

53.    Also, in connection with CMF's collective bargaining agreement (the "<u>CBA</u>") with United Steelworkers, CMF makes contributions to the Steelworkers Pension Trust (the "<u>Steelworkers Pension</u>").  Pursuant to the CBA, CMF contributes to the Steelworkers Pension in the amount of $1.70 per hour worked per employee[4] hired after February 1, 2012.  CMF estimates that, as of the Petition Date, approximately $21,000.00 is owed as of May 10, 2016, as a required contribution to the Steelworkers Pension pursuant to the CBA.  By this Motion, the Debtors are seeking authority to pay such amounts.

---

[4] In order for the employee to be counted towards CMF's obligations under the Steelworkers Pension, the employee must complete his or her probationary period.

13

c.    *The Jorgensen Forge Corporation*

54.    <u>Workers' Compensation</u>.  JFC maintains a workers' compensation benefits plan, as mandated by the state of Washington's Department of Labor and Industries.  The annual cost of the plan is approximately $212,000.00.  Payments for the plan are remitted quarterly to the State of Washington.  JFC estimates that, as of the Petition Date, approximately $10,686.00 is outstanding with respect to this plan.  The Debtors seek authority to pay such amounts.

55.    <u>Paid Leave</u>.  Historically, JFC has provided its employees with vacation and paid time off and has cashed out accrued and unused vacation and paid time off for its employees upon their termination.  JFC estimates that, as of the Petition Date, approximately $284,298.00 is outstanding with respect to such obligations.  On May 9, 2016, JFC terminated one employee who is owed $48.20 for accrued and unused paid time off and vacation.  By this Motion, the Debtors seek authority to continue this vacation and paid time off policy, to cash out any accrued and unused vacation to any employee this is terminated and to pay $48.20 to the terminated employee.

56.    <u>Medical Insurance</u>.  JFC offers medical insurance plans provided by Medova Healthcare and a dental reimbursement plan by Aetna.  The JFC Employees contribute 20 percent of the monthly premium owed for this plan.  JFC estimates that, as of the Petition Date, approximately $135,187.00 is outstanding with respect to these medical insurance plans.  The Debtors seek authority to pay such amounts.

57.    <u>Life Insurance and Similar Plans</u>.  JFC provides 104 of the JFC Employees with life and accidental death and dismemberment insurance through Lincoln National Life Insurance.  JFC pays $17,000.00 annually for this insurance.  JFC estimates that, as of the Petition Date, approximately $9,384.00 is outstanding with respect to this insurance obligation.  The Debtors seek authority to pay such amounts.

58.    401(k) Retirement Plan.  JFC maintains a 401(k) plan and matches employee contributions at the rate of 4 percent of base salary up to a maximum of $2,400.00 per calendar year.  JFC estimates that, as of the Petition Date, no amounts owed remain outstanding with respect to the 401(k) plan.

59.    Employee-Funded Plans.  JFC offers a variety of benefits plans that are funded by the JFC Employees, including a long-term care plan, short-term disability insurance, and additional life insurance.

d.    Zero Manufacturing, Inc.

60.    Workers' Compensation.  Zero maintains a workers' compensation benefits plan with Workers' Compensation of Utah.  The annual cost of the plan is approximately $75,000.00.  In February of 2016, Zero made a down payment for this plan in the amount of $18,551.09.  The balance of the annual cost will be paid in nine monthly installments of $6,181.22.  Zero estimates that, as of the Petition Date, approximately $50,000.00 is outstanding with respect to this plan.  The Debtors seek authority to pay such amounts.

61.    Paid Leave.  Historically, Zero has provided its employees with vacation and paid time off and has cashed out accrued and unused vacation and paid time off for its employees upon their termination.  Zero estimates that, as of the Petition Date, approximately $300,000.00 is outstanding with respect to such obligations.  By this Motion, the Debtors seek authority to continue this vacation and paid time off policy and to cash out any accrued and unused vacation and paid time off to any employee that is terminated.

62.    Medical Insurance.  Zero offers a medical insurance plan provided by Cigna to Zero Employees.  This medical insurance plan is partially self-insured.  Zero pays $100,000.00 in premiums each month for this medical insurance plan.  Of that $100,000.00, the insured Zero Employees contribute $27,000.00 each month, which is deducted from their paychecks each pay

15

period.  Zero estimates that, as of the Petition Date, approximately $100,000.00 is outstanding with respect to this medical insurance plan.  The Debtors seek authority to pay such amounts.

63.     Additionally, Zero offers a dental insurance plan provided by Cigna.  Zero pays $9,500.00 in premiums each month for this dental insurance plan.  Of that $9,500.00, the insured Zero Employees contribute $3,100.00 each month, which is deducted from their paychecks each pay period.  Zero estimates that, as of the Petition Date, approximately $8,500.00 is outstanding with respect to this dental insurance plan.  The Debtors seek authority to pay such amounts.

64.     Life Insurance and Similar Plans.  Zero offers the Zero Employees various life insurance and related programs, including:  (i) basic life insurance, (ii) accidental death and dismemberment insurance, (iii) short term disability insurance, and (iv) long term disability insurance.  Unum Group provides such plans.  Each month, Zero pays $5,073.00 for these life insurance and other plans.  Of that $5,073.00, the insured Zero Employees contribute $1,850.00 each month, which is deducted from their paychecks each pay period.  Zero estimates that, as of the Petition Date, approximately $5,073.00 is outstanding with respect to these obligations.  The Debtors seek authority to pay such amounts.

65.     401(k) Retirement Plan.  Zero maintains a 401(k) plan.  Zero matches Zero Employees' contributions in the amount of $0.50 of each dollar up to a maximum of 6 percent of base wage.  As of the Petition Date, Zero believes no amounts are owed on account of the 401(k) plan.

66.     Yearly Employee Service Awards.  Zero distributes awards to the Zero Employees based on length of service.  These awards boost the Zero Employees' morale and recognize the Zero Employees' loyalty to the company.  The annual cost of these awards to Zero

RLF1 14444161v.6

is approximately $1,500.00, and Zero pays this cost in June. As of the Petition Date, Zero believes no amounts are owed on account of the Yearly Employee Service Awards.

67.     Accordingly, the Debtors seek authority to pay $1,110,911.36 on account of Employee Benefits Programs related to periods prior to the Petition Date.

**E.      Other Employee-Related Obligations of the Opco Debtors**

68.     Many of the Opco Debtors maintain severance programs. These programs vary in the amount of severance provided and to whom severance is provided. By this Motion, the Debtors are not seeking to pay any amounts owed on account of their severance programs.

**F.      Employee-Related Obligations of the Holding Company Debtors**

69.     As of the Petition Date, Eclipse Manufacturing Co. ("Eclipse") does not have any Employees or Independent Contractors; however, Eclipse does have obligations with respect to two frozen pension plans. In the ordinary course of business, Eclipse makes periodic contributions to the pension plans that it maintains (the "Eclipse Pension Plans") in accordance with the Eclipse Pension Plans' documents and applicable law. By this Motion, the Debtors are not seeking authority to make any contributions to the Eclipse Pension Plans.

**RELIEF REQUESTED**

70.     By this Motion, the Debtors seek authority, to be exercised in their sole discretion, to pay and honor certain prepetition claims as set forth above and as itemized on Exhibit C hereto, and all other benefits that the Debtors have historically provided in the ordinary course of business (collectively, the "Employee Wages and Benefits"), and to pay all administrative costs associated with such Employee Wages and Benefits. The Debtors also seek authority, to be exercised in their sole discretion, to continue to reimburse Employees for business-related expenses they incur in the ordinary course of business. In addition, the Debtors request the right to modify, change and discontinue any of the Employee Wages and Benefits and the policy

17

related to reimbursable expenses in the ordinary course of business, in their sole discretion, without the need for further Court approval.

71.    Moreover, the Debtors request that the Court authorize financial institutions to receive, process, honor and pay all checks presented for payment and electronic payment requests relating to the foregoing, whether such checks were presented or electronic requests were submitted prior to or after the Petition Date.   The Debtors also request the Court to authorize applicable financial institutions to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this Motion.

## BASIS FOR RELIEF

**A.    Payment of the Employee Obligations is Appropriate under the Bankruptcy Code**

72.    Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, a debtor-in-possession is a fiduciary "holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners." In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the fiduciary duties of any debtor-in-possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." Id.  Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." Id.  The CoServ court specifically noted that the satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." Id.

73.    Consistent with a debtor's fiduciary duties, courts have also authorized payment of prepetition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so.  See, e.g., In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to justify payment of

18

prepetition wages); see also Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.), 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors).

74.     In addition, the Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a), courts may permit preplan payments of prepetition obligations when essential to the continued operation of the debtor's business.  Specifically, the Court may use its power under section 105(a) to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").

75.     The "doctrine of necessity" or the "necessity of payment" rule originated in railway cases and was first articulated by the United States Supreme Court in Miltenberger v. Logansport, C.&S.W.R. Co., 106 U.S. 286 (1882).  The doctrine was expanded to non-railroad debtors in the mid-century.  See Dudley v. Mealey, 147 F.2d 268, 271 (2d Cir. 1945) (holding, in a hotel reorganization case, that the court was not "helpless" to apply the rule to supply creditors of non-railroad debtors where the alternative was the cessation of operations).

76.     The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981).  The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor.  Id. (stating that court

RLF1 14444161v.6

may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); see also In re Penn Cent. Transp. Co., 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); In re Just for Feet, Inc., 242 B.R. 821, 824-845 (Bankr. D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business);  In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

77.    Today, the rationale for the necessity of payment rule—the rehabilitation of a debtor in reorganization cases—is "the paramount policy and goal of Chapter 11."  In re Ionosphere Clubs, Inc., 98 B.R. at 176; see also Just For Feet, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); In re Quality Interiors, Inc., 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); In re Eagle-Picher Indus., Inc., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.), 829 F.2d 1484, 1490 (9th Cir. 1987) (recognizing that allowance of "unequal treatment of pre-petition debts when necessary for rehabilitation" is appropriate); Mich. Bureau of Workers'

Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.), 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of prepetition workers' compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately"); 3 COLLIER ON BANKRUPTCY, 105.04[5][a] (15th ed. rev. 2004) (discussing cases in which courts have relied on the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately).

78.    Courts also have permitted postpetition payment of prepetition claims pursuant to section 105(a) in other situations, such as if nonpayment of a prepetition obligation would trigger a withholding of goods or services essential to the debtors' business reorganization plan.  See In re UNR Indus., 143 B.R. 516, 520 (Bankr. N.D. Ill. 1992) (permitting the debtor to pay prepetition claims of suppliers or employees whose continued cooperation is essential to the debtors' successful reorganization); Ionosphere Clubs, 98 B.R. at 167-77 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

79.    This flexible approach is particularly critical where a prepetition creditor provides vital goods or services to a debtor that would be unavailable if the debtors did not satisfy their prepetition obligations.  In re Structurlite Plastics Corp., 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988), the bankruptcy court stated that "a bankruptcy court may exercise its equity powers under § 105(a) [of the Bankruptcy Code] to authorize payment of prepetition claims where such payment is necessary 'to permit the greatest likelihood of survival of the debtors and payment of creditors in full or at least proportionately.'"  Id.  The court explained that "a *per se* rule

proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." Id. at 932.

**B.    Sufficient Cause Exists to Authorize the Debtors to Honor Employee Wages and Benefits Obligations**

80.    The majority of the prepetition wages and other employee claims the Debtors seek to pay would be entitled, in any event, to priority treatment to the extent of $12,475 for each individual under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.  As priority claims, the Debtors are required to pay these claims in full to confirm a chapter 11 plan.  See U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for (a) wages, salaries or commissions, including vacation, and sick leave pay earned by an individual, and (b) contributions to an employee benefit plan).  Thus, granting the relief sought herein would only cause such employee claims to be paid at the outset of these Chapter 11 Cases, rather than waiting until the confirmation of any potential plan in these Chapter 11 Cases, to the extent that they constitute priority claims.

81.    By this Motion, the Debtors seek authority to pay outstanding prepetition obligations to their Employees and Independent Contractors in full.  The Debtors do not believe that there are any Employees or Independent Contractors whose claims for prepetition obligations exceed the $12,475 cap under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.  As such, the Debtors are not seeking authority to pay any amounts in excess of the $12,475 cap under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code pursuant to this Motion.  As discussed above, there are several provisions of the Bankruptcy Code that authorize a debtor to honor prepetition obligations if the circumstances warrant and that therefore support the relief requested in this Motion.  Such payments are justified by the critical nature of the services provided by such Employees and Independent Contractors.

82.     As described above, the majority of the Debtors' Employees rely exclusively on their compensation, benefits or reimbursement of their expenses to satisfy their daily living expenses.  Consequently, these Employees will be exposed to significant financial difficulties if the Debtors are not permitted to honor obligations for unpaid compensation, benefits and reimbursable expenses.   Moreover, if the Debtors are unable to satisfy such obligations, Employee morale and loyalty will be jeopardized at a time when their support is critical.

83.     Furthermore, if the Debtors are not authorized to honor their various obligations under their insurance programs, their Employees will not receive health coverage and may become obligated for the payment of health care claims in cases when insurance providers and health plan administrators have not been paid by the Debtors.  The loss of health care coverage will result in considerable anxiety for Employees at a time when the Debtors need such Employees to perform their jobs at peak efficiency.

84.     For all of the foregoing reasons, the payment of the Debtors' prepetition Employee Wages and Benefits will benefit the estates and their creditors by allowing the Debtors' business operations to continue without interruption.  In the absence of such payments, the Debtors' Employees may seek alternative employment opportunities.  Such a development would deplete the Debtors' workforce, hindering the Debtors' ability to meet their customer obligations and likely diminishing creditor confidence in the Debtors.  Moreover, the loss of valuable Employees and the recruiting efforts that would be required to replace such Employees would be a massive and costly distraction at a time when the Debtors should be focusing on stabilizing their operations.  Accordingly, the Debtors must pursue all reasonable measures to retain their Employees by, among other things, continuing to honor all wages, benefits and related obligations, including those that accrued prepetition.

**C.      Funds Deducted from Employees' Paychecks may be Held in Trust and are not Property of the Estates**

85.      The Opco Debtors deduct from the Employees' and Independent Contractors' paychecks the amounts necessary to satisfy local, state and federal withholding and payroll-related or similar taxes.  These deductions may be held in trust for the benefit of the applicable taxing authority.  As a result, these deductions and the deductions from the Employees' and the Independent Contractors' paychecks for the various benefits plans, insurance programs and other similar programs and plans are not property of the Debtors' estates under Bankruptcy Code section 541.  Therefore, such funds are not available for the satisfaction of creditors' claims. See, e.g., Begier v. IRS, 496 U.S. 53 (1990) (withholding taxes are property held by the debtor in trust for another and, as such, not property of the debtor's estate); City of Farrell v. Sharon Steel Corp., 41 F.3d 92, 95 (3d Cir. 1994) (withheld taxes were subject to a trust); see generally In re Columbia Gas Sys. Inc., 997 F.2d 1039, 1060 (3d Cir. 1993) (indicating that even if a statute does not establish an express trust, a constructive trust may be found).

86.      Many federal, state and local statutes also impose personal liability on officers and directors of companies for certain payroll tax and other payroll deductions that such entities owe.  To the extent that the relevant payroll taxes and other payroll deductions remain unpaid by the Debtors, the Debtors' directors, officers and executives may be subject to lawsuits or criminal prosecution during the pendency of these Chapter 11 Cases.  Any such lawsuit or criminal prosecution (and the ensuing potential liability) would distract the Debtors and their officers, directors and executives from devoting their full attention to the Debtors' business and the orderly administration of the Chapter 11 Cases.  The Debtors believe that these distractions would materially and adversely affect their ability to operate in the ordinary course of business and to administer these Chapter 11 Cases, with resulting detriment to any parties in interest.

87.     Accordingly, the Debtors submit that the relief requested is essential, appropriate and in the best interests of their estates and creditors, and any parties in interest, and therefore, should be granted.

**D.     Failure to Honor Employee Obligations within 21 Days of the Petition Date would Cause Immediate and Irreparable Harm**

88.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief regarding a motion to pay all or part of a prepetition claim within twenty-one (21) days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm.

89.     As described above, the Debtors' Employees are integral to the Debtors' operations.  Failure to satisfy obligations with respect to the Employees in the ordinary course of business during the first twenty-one (21) days of these Chapter 11 Cases will jeopardize their loyalty and trust, causing Employees to leave the Debtors' employ and severely disrupting the Debtors' operations at this critical juncture.

90.     Moreover, the Debtors' Employees rely on their compensation, benefits and reimbursement of expenses to pay their living expenses, and the effect could be financially ruinous if the Debtors cannot pay them in the ordinary course of business.  Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 to support immediate payment of their Employee obligations.

**E.     Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers**

91.     The Debtors represent they have sufficient availability of funds to pay the amounts described herein in the ordinary course of business by virtue of cash reserves, expected cash flows from ongoing business operations and anticipated access to debtor-in-possession financing.  Also, under the Debtors' existing cash management system, the Debtors represent that checks or wire transfer requests can be readily identified as relating to an authorized

25

payment in respect of the Employee obligations.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that the Court should authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor and pay any and all checks or wire transfer requests in respect of the Employee obligations.

92.     For all of the foregoing reasons, the Debtors believe that granting the relief requested herein is appropriate and in the best interests of all parties in interest.

## DEBTORS' RESERVATION OF RIGHTS

93.     Nothing contained herein is intended to or should be construed as an admission of the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code.   The Debtors expressly reserve their right to contest any invoice of an Employee or Independent Contractor under applicable non-bankruptcy law.   Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to and should not be construed as an admission of the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## NOTICE

94.     The Debtors shall provide notice of this Motion to:  (a) the Office of the United States Trustee for the District of Delaware; (b) each of the Debtors' creditors holding the thirty (30) largest unsecured claims on a consolidated basis; (c) the Roll-Up DIP Lenders; (d) the DIP Lenders; (e) the DIP Agent; and (f) all parties entitled to notice pursuant to Local Rule 9013-1(m).  Due to the urgency of the circumstances surrounding this Motion and the nature of the

relief requested herein, the Debtors respectfully submit that no further notice of this Motion is required.

## **NO PRIOR REQUEST**

95.     No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein and in the Stallkamp Declaration, the Debtors respectfully request that the Court enter interim and final orders, substantially in the forms attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u>:  (a) authorizing, but not directing, the Debtors to pay in the ordinary course of business certain prepetition amounts owed on account of (i) Employee Compensation Obligations, and (iii) Employee Benefits Programs; (b) authorizing financial institutions to receive, process, honor and pay all checks presented for payment and electronic payment requests relating thereto; and (c) granting such other and further relief as the Court may deem just and proper.

Dated: May 17, 2016
      Wilmington, Delaware

Respectfully submitted,

 _/s/ Daniel J. DeFranceschi_
Daniel J. DeFranceschi (No. 2732)
Zachary I. Shapiro (No. 5103)
Rachel L. Biblo (No. 6012)
Joseph C. Barsalona II (No. 6102)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

Adam C. Rogoff
Joseph A. Shifer
KRAMER LEVIN NAFTALIS & FRANKEL LLP
177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 715-9100
Facsimile:  (212) 715-8000

_Proposed Attorneys for the Debtors and Debtors-in-Possession_

RLF1 14444161v.6

# EXHIBIT A

## Proposed Interim Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **Constellation Enterprises LLC** *et al.,*[1] | ) | **Case No. 16-_____ (_____)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |
| | ) | |
| | ) | Re: Docket No. ___ |

**INTERIM ORDER (A) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO
PAY CERTAIN PREPETITION (I) WAGES, SALARIES AND OTHER
COMPENSATION, (II) REIMBURSABLE EMPLOYEE EXPENSES,
AND (III) EMPLOYEE MEDICAL AND SIMILAR BENEFITS;
AND (B) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR
ALL RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order (the "Order") (a) authorizing, but not directing, the Debtors to pay in the ordinary course of business certain prepetition (i) wages, salaries and other compensation, (ii) reimbursable employee expenses, and (iii) employee benefits; and (b) authorizing financial institutions to receive, process, honor and pay all checks presented for payment and electronic payment requests relating thereto; and upon the Stallkamp Declaration; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors and other parties in interest; and it appearing that failure to grant the relief requested in the Motion immediately will cause immediate and irreparable harm to the Debtors; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, where applicable are: Constellation Enterprises LLC (9571); Columbus Steel Castings Company (8153); The Jorgensen Forge Corporation (1717); Eclipse Manufacturing Co. (1493); Zero Manufacturing, Inc. (8362); Metal Technology Solutions, Inc. (7203); Columbus Holdings Inc. (8155); Zero Corporation (0538); JFC Holding Corporation (0312); and Steel Forming, Inc. (4995). The debtors' mailing address is located at 50 Tice Boulevard, Suite 340, Woodcliff Lakes, NJ 07677.

[2] All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

1334; and it appearing that this Motion is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2); and it appearing that venue of this proceeding and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of this Motion having been provided; and it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.      The Motion is GRANTED as set forth herein.

2.      Subject to the requirements of sections 507(a)(4) and (a)(5) and pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are authorized, but not required, to satisfy all prepetition amounts relating to the Employee Compensation Obligations without further order of the Court.  Amounts paid pursuant to this Motion shall not exceed $2,500,060.79 in the aggregate absent further order of the Court.

3.      Subject to the requirements of sections 507(a)(4) and (a)(5) and pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are authorized, but not required, to satisfy all prepetition obligations relating to the Employee Benefits Programs without further order of the Court.  Amounts paid pursuant to this Motion shall not exceed $1,110,911.36 in the aggregate absent further order of the Court.

4.      The Debtors are authorized, but not required, to make the owing contribution to the Steelworkers Pension in the amount of $21,000.00.

5.      The Debtors are authorized, upon consultation with the DIP Lenders, but not required, to pay to the Employees all reimbursable expenses accrued and owed in an amount not to exceed $34,523.80.

6.      The Debtors shall not pay any Employee or Independent Contractor more than $12,475.00 on account of prepetition Employee Compensation Obligations or paid leave that is accrued and unpaid as of the Petition Date with respect to any one Employee or one Independent Contractors.

7.      No payments authorized by this Order shall be made in excess of the amounts permitted by sections 507(a)(4) and (a)(5) of the Bankruptcy Code.

8.      To the extent the Debtors are authorized by this Order to cash out accrued and unused vacation and paid time off, the Debtors may only do so to the extent required by applicable state law.

9.      The Debtors are authorized, but not required, to continue to honor all practices, programs and policies with respect to the Employees as such practices, programs, and policies were in effect as of the date on which the Chapter 11 Cases were commenced and as may be modified in the ordinary course of the Debtors' business, including, but not limited to, the Employee Benefits Programs.

10.      The Debtors are authorized, but not required, to pay costs and expenses incidental to the payment of the Employee Wages and Benefits, including all administration and processing costs and payments to outside professionals, in the ordinary course of business, in order to facilitate the administration and maintenance of the Debtors' programs and policies related to the Employee Wages and Benefits.

11.      The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in respect of prepetition amounts owed to the Employees and Independent Contractors that are

3

dishonored as a consequence of these Chapter 11 Cases and to the extent such prepetition amounts are authorized to be paid pursuant to this Order.

12.    All applicable banks and other financial institutions are authorized, subject to the terms of this Order, at the Debtors' instruction, to receive, process, honor and pay, to the extent of funds on deposit, any and all checks issued or to be issued or electronic transfers requested or to be requested by the Debtors relating to this Order, whether presented prior to or after the Petition Date; provided, however, no bank or other financial institution shall incur any liability for relying upon the Debtors' instructions unless such bank's or financial institution's actions constituted gross negligence, fraudulence or willful misconduct.

13.    Notwithstanding anything to the contrary contained in the Motion or the relief granted in this Order, any payment to be made, or authorization contained, hereunder, shall be subject to the requirements imposed on the Debtors pursuant to the debtor-in-possession lending facility approved in the *Interim Order (A) Authorizing the Debtors to Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Adequate Protection to the Adequate Protection Parties, (D) Scheduling a Final Hearing, and (E) Granting Related Relief*, or any related final order, as the same may be amended, modified, or supplemented in accordance with its terms, and in each case subject to any budget (with permitted variances) approved by the DIP Lenders in connection therewith.

14.    The requirements set forth in Rule 6003(b) of the Bankruptcy Rules are satisfied by the contents of the Motion.

15.    A Final Hearing to consider the Motion is scheduled for _____ _____, 2016 at _____ __.m. (EDT) before the Honorable _____, in the United States

4

Bankruptcy Court for the District of Delaware.  Any objections to the relief requested in the Motion must be filed with the Clerk of the Court and served upon (a) the Debtors, 50 Tice Boulevard, Suite 340, Woodcliff Lakes, NJ 07677, Attn.: Donald S. MacKenzie; (b) counsel to the Debtors, Kramer Levin Naftalis & Frankel LLP, 1777 Avenue of the Americas, New York, New York, 10036 Attn:  Adam Rogoff; (c) co-counsel to the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington Delaware 19801, Attn: Daniel J. DeFranceschi; (d) counsel to the Roll-up DIP Lenders, Hahn & Hessen LLP, 488 Madison Avenue, New York, New York 10002 Attn:  William C. Robertson; (e) counsel to the DIP Lenders, Akin Gump Strauss Hauer & Feld, 1333 New Hampshire Avenue NW, Washington, DC 20036 Attn: Scott L. Alberino and One Bryant Park, New York, New York, Attn: Jason P. Rubin; (f) counsel to any statutory committee appointed in these cases; and (g) Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn:  Linda Casey on or before _____ _____, 2016 at _____.m. (EDT).

16.     Nothing in the Motion or this Order, nor as a result of the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as:  (a) an admission as to the validity or priority of any claim against the Debtors, (b) a waiver of the Debtors' or any other parties' rights to dispute any claim, or (c) an approval or assumption of any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code.

17.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

18.     The Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order.

Dated: _____, 2016
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

6

**<u>EXHIBIT B</u>**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **Constellation Enterprises LLC** *et al.,*[1] | ) | **Case No. 16-_____ (_____)** |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |
| | ) | |
| | ) | Re: Docket No. ___ |

**FINAL ORDER (A) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS
TO PAY CERTAIN PREPETITION (I) WAGES, SALARIES AND OTHER
COMPENSATION, (II) REIMBURSABLE EMPLOYEE EXPENSES,
AND (III) EMPLOYEE MEDICAL AND SIMILAR BENEFITS;
AND (B) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR
ALL RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order (the "Order") (a) authorizing, but not directing, the Debtors to pay in the ordinary course of business certain prepetition (i) wages, salaries and other compensation, (ii) reimbursable employee expenses, and (iii) employee benefits; and (b) authorizing financial institutions to receive, process, honor and pay all checks presented for payment and electronic payment requests relating thereto; and upon the Stallkamp Declaration; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors and other parties in interest; and it appearing that failure to grant the relief requested in the Motion immediately will cause immediate and irreparable harm to the Debtors; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, where applicable are: Constellation Enterprises LLC (9571); JFC Holding Corporation (0312); The Jorgensen Forge Corporation (1717); Columbus Holdings Inc. (8155); Columbus Steel Castings Company (8153); Zero Corporation (0538); Zero Manufacturing, Inc. (8362); Metal Technology Solutions, Inc. (7203); Eclipse Manufacturing Co. (1493); and Steel Forming, Inc. (4995). The debtors' mailing address is located at 50 Tice Boulevard, Suite 340, Woodcliff Lakes, NJ 07677.

[2] All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

1334; and it appearing that this Motion is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2); and it appearing that venue of this proceeding and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of this Motion having been provided; and it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefor,

1.      The Motion is GRANTED as set forth herein.

2.      Subject to the requirements of sections 507(a)(4) and (a)(5) and pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are authorized, but not required, to satisfy all prepetition amounts relating to the Employee Compensation Obligations without further order of the Court.  Amounts paid pursuant to this Motion shall not exceed $2,500,060.79 in the aggregate absent further order of the Court.

3.      Subject to the requirements of sections 507(a)(4) and (a)(5) and pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are authorized, but not required, to satisfy all prepetition obligations relating to the Employee Benefits Programs without further order of the Court.  Amounts paid pursuant to this Motion shall not exceed $1,110,911.36 in the aggregate absent further order of the Court.

4.      The Debtors are authorized, but not required, to make the owing contribution to the Steelworkers Pension in the amount of $21,000.00.

5.      The Debtors are authorized, upon consultation with the DIP Lenders, but not required, to pay to the Employees all reimbursable expenses accrued and owed in an amount not to exceed $34,523.80.

6.      The Debtors shall not pay any Employee or Independent Contractor more than $12,475.00 on account of prepetition Employee Compensation Obligations or paid leave that is

accrued and unpaid as of the Petition Date with respect to any one Employee or one Independent Contractor.

7. No payments authorized by this Order shall be made in excess of the amounts permitted by sections 507(a)(4) and (a)(5) of the Bankruptcy Code

8. The Debtors are authorized, but not required, to continue to honor all practices, programs, and policies with respect to the Employees as such practices, programs, and policies were in effect as of the date on which the Chapter 11 Cases were commenced and as may be modified in the ordinary course of the Debtors' business, including, but not limited to, the Employee Benefits Programs.

9. The Debtors are authorized, but not required, to pay costs and expenses incidental to the payment of the Employee Wages and Benefits, including all administration and processing costs and payments to outside professionals, in the ordinary course of business, in order to facilitate the administration and maintenance of the Debtors' programs and policies related to the Employee Wages and Benefits.

10. The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in respect of prepetition amounts owed to the Employees and Independent Contractors that are dishonored as a consequence of these Chapter 11 Cases and to the extent such prepetition amounts are authorized to be paid pursuant to this Order.

11. All applicable banks and other financial institutions are authorized, subject to the terms of this Order, at the Debtors' instruction, to receive, process, honor and pay, to the extent of funds on deposit, any and all checks issued or to be issued or electronic transfers requested or to be requested by the Debtors relating to this Order, whether presented prior to or after the

3

Petition Date; provided, however, no bank or other financial institution shall incur any liability for relying upon the Debtors' instructions unless such bank's or financial institution's actions constituted gross negligence, fraudulence or willful misconduct.

12.     Notwithstanding anything to the contrary contained in the Motion or the relief granted in this Order, any payment to be made, or authorization contained, hereunder, shall be subject to the requirements imposed on the Debtors pursuant to the debtor-in-possession lending facility approved in the *Interim Order (A) Authorizing the Debtors to Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Adequate Protection to the Adequate Protection Parties, (D) Scheduling a Final Hearing, and (E) Granting Related Relief*, or any related final order, as the same may be amended, modified, or supplemented in accordance with its terms, and in each case subject to any budget (with permitted variances) approved by the DIP Lenders in connection therewith.

13.     Nothing in the Motion or this Order, nor as a result of the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as:  (a) an admission as to the validity or priority of any claim against the Debtors, (b) a waiver of the Debtors' rights or any other parties' rights to dispute any claim, or (c) an approval or assumption of any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code.

14.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

15.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2016
          Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

5

# EXHIBIT C

## Itemized Chart

| Debtor Entity | Obligation | Amount Seeking to Pay by Motion |
|---|---|---|
| **PAYROLL** | | |
| **CSC** | Employee Payroll Obligation | $875,000.00 |
| **CSC** | Independent Contractor Payroll Obligation | $0.00 |
| **CMF** | Employee Payroll Obligation | $325,000.00 |
| **CMF** | Independent Contractor Payroll Obligation | $45,334.00 |
| **CMF** | Commission Obligation | $0.00 |
| **JFC** | Employment Agency Obligation | $121,740.00 |
| **JFC** | Employee Payroll Obligation | $577,600.00 |
| **JFC** | Commission Obligation | $9,386.79 |
| **Zero** | Employee Payroll Obligation | $450,000.00 |
| **Zero** | Commission Obligation | $96,000.00 |
| | Total seeking: | **$2,500,060.79** |
| **REIMBURSABLE EXPENSES** | | |
| **CSC** | Reimbursable Expenses | $15,000.00 |
| **CMF** | Reimbursable Expenses | $5,223.80 |
| **JFC** | Reimbursable Expenses | $10,300.00 |
| **Zero** | Reimbursable Expenses | $4,000.00 |
| | Total seeking: | **$34,523.80** |
| **BENEFITS** | | |
| **CSC** | Workers' Compensation | $0.00 |
| **CSC** | Paid Leave | $0.00 |
| **CSC** | General Health Insurance | $310,000.00 |
| **CSC** | Dental Insurance | $17,000.00 |
| **CSC** | Vision Insurance | $2,732.00 |
| **CSC** | Life Insurance and Other Related Plans | $21,400.00 |
| **CSC** | Supplemental Life Insurance and Other Related Plans | $65,860.16 |
| **CSC** | 401(k) | $0.00 |
| **CMF** | Workers' Compensation | $0.00 |
| **CMF** | Paid Leave | $0.00 |
| **CMF** | Health Insurance | $375,041.00 |
| **CMF** | Life Insurance and Other Related Plans | $0.00 |
| **CMF** | 401(k) | $0.00 |
| **JFC** | Workers' Compensation | $10,686.00 |
| **JFC** | Paid Leave | $48.20 |
| **JFC** | Health Insurance | $135,187.00 |

| Debtor Entity | Obligation | Amount Seeking to Pay by Motion |
|---|---|---|
| BENEFITS CONTINUED | | |
| JFC | Life Insurance and Other Related Plans | $9,384.00 |
| JFC | 401(k) | $0.00 |
| Zero | Workers' Compensation | $50,000.00 |
| Zero | Paid Leave | $0.00 |
| Zero | Health Insurance | $100,000.00 |
| Zero | Dental Insurance | $8,500.00 |
| Zero | Life Insurance and Other Related Plans | $5,073.00 |
| Zero | 401(k) | $0.00 |
| Zero | Yearly Employee Service Awards | $0.00 |
| | | Total seeking:  $1,110,911.36 |
| PENSION | | |
| Eclipse Manufacturing Co. | Pension Related | $0 |
| CMF | CBA Pension Related | $21,000 |
| CMF | Pension Related | $0.00 |
| | | Total seeking:  $21,000.00 |

2