**Exhibit C to the Bidding Procedures Motion**

**Sale Term Sheet**

*EXECUTION COPY*

**Summary of Principal Terms of Proposed Sale of Substantially
All of the Assets of Constellation Enterprises LLC and Its Subsidiaries**

      The following summary of principal terms (this "Term Sheet")[1] provides an outline of a proposed sale of substantially all of the assets of Constellation Enterprises LLC and certain of its direct and indirect subsidiaries (in each case, excluding Columbus Holdings Inc. and Columbus Steel Casting Company, and with Columbus Holdings Inc. and Columbus Steel Casting Company being referred to herein together as "Columbus") pursuant to sections 105, 363(b), (f), (k) and (m), and 365 of title 11 of the United States Code (the "Bankruptcy Code") in connection with the filing of petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). This Term Sheet is meant only as a summary of terms to be used by the Company and certain of the noteholders (as identified on Annex A hereto, the "Supporting Holders" and, together with all noteholders, the "Holders") under that certain Amended and Restated Indenture, dated as of February 1, 2016, among Constellation Enterprises LLC, the guarantors party thereto and Wells Fargo Bank, National Association, as Trustee and Collateral Agent (the "Trustee") (as the same may be or has been amended from time to time, the "Indenture") in negotiating the transactions contemplated herein.

      The terms and conditions described herein are part of a comprehensive proposal, each element of which is consideration for the other elements and is an integral aspect of such proposal. This Term Sheet does not constitute an offer or a legally binding obligation of the Company (as defined below), Supporting Holders, Purchaser (as defined below), or any other party in interest, and no legally binding obligation will exist unless and until definitive documents are executed by and among the appropriate parties. The transactions contemplated by this Term Sheet will be subject to conditions to be set forth in such definitive documents.

**Transaction Overview**

| | |
|---|---|
| **Sellers** | Constellation Enterprises LLC and certain of its direct and indirect subsidiaries other than Columbus (collectively, the "Company" or the "Sellers"). |
| **Purchaser** | A new Delaware limited liability company (such limited liability company or other form of entity as selected by the Supporting Holders in their sole and absolute discretion, "Purchaser") to be organized by the Supporting Holders and formed immediately prior to the execution of the Asset Purchase Agreement (as defined below) on behalf of the Holders. |
| | Simultaneously with the execution of the Asset Purchase Agreement, the Supporting Holders shall execute an Auction, Commitment and Subscription Agreement (the "Auction Agreement") in which the Supporting Holders will commit to capitalize Purchaser at closing and to support the transactions under the Asset Purchase Agreement. |
| | Immediately following the closing, Purchaser will be owned, directly or indirectly, pro rata by the Holders based on their pre-petition claims, subject to dilution by equity issued pursuant to a rights |

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Indenture.

|  |  |
|---|---|
| | offering. |
| **Sale** | This Term Sheet describes a proposed sale by the Sellers of all of their right, title, and interest in, to, and under the Purchased Assets (as defined below) to Purchaser, free and clear of any and all pledges, options, charges, liabilities, liens, claims, encumbrances, or interests except the Assumed Liabilities, and the assumption by Purchaser of the Assumed Liabilities (as defined below), pursuant to Sections 105, 363(b) (f), (m) and (k) and 365 of the Bankruptcy Code (collectively, the "Sale"). |
| | The Sellers and Purchaser shall consummate the Sale promptly after the conditions set forth in the Asset Purchase Agreement have been satisfied or waived pursuant to the Asset Purchase Agreement (such date of consummation being the "Closing Date"). |
| | Purchaser may assign the right to purchase certain of the Purchased Assets to one or more of its affiliates. |
| **Purchase Price** | The aggregate consideration for the Purchased Assets shall consist of the following (collectively, the "Purchase Price"): (i) cash in an amount sufficient to satisfy any outstanding claims as of the Closing Date under the DIP Facility[2] and, to the extent outstanding and not included in the DIP Facility, the Prepetition PNC Facility; (ii) cash to be paid into a separate escrow account (the "Wind-Down and Professional Escrow Account") in an amount sufficient to satisfy the amounts to be paid following the Closing Date pursuant to the terms of the to be agreed-upon budget for Wind-Down Expenses and unpaid retained professional fees; provided, however, that such expenses and fees and the corresponding amounts for such expenses and fees set forth in or contemplated by the wind-down budget, and the cash to be paid pursuant to this clause (ii), shall be reduced to the extent any such fees and expenses are assumed or included as Assumed Liabilities,[3] (iii) pursuant to section 363(k) of the Bankruptcy Code, a credit bid of the Obligations owed by the Company arising under the Indenture in an amount to be set forth in the Asset Purchase Agreement by Purchaser, in its sole and absolute discretion; and (iv) assumption of the Assumed Liabilities (including all Cure Costs related to Assumed Contracts). |
| **Purchased Assets** | "Purchased Assets" shall include all assets of the Company except the Excluded Assets (as defined below), including without limitation: (i) all accounts receivable, notes receivable, pre-paid expenses, cash and |

---

[2] "DIP Facility" means that certain DIP Credit Facility to which this term sheet is attached.
[3] "Wind-Down Expenses" means the out-of-pocket costs and expenses that Sellers are required to incur in connection with winding down their bankruptcy estates, in each case, to the extent such costs and expenses are incurred from and after the Closing Date and as set forth in the budget to be agreed upon between the Purchaser and the Company prior to Closing Date. The budget shall be limited to the 'burial' costs required to shut down the businesses/entities and shall exclude any other expenses.

|  |  |
|---|---|
|  | cash equivalents, (ii) all intellectual property rights, including all trade names, trademarks and the like, which relate to or are used in the business conducted by any of the Sellers (the "Business"), (iii) all of the Sellers' personal property, inventory, equipment, fixtures, and other assets customarily considered 'PP&E', (iv) all deposits and prepaid or deferred charges and expenses of the Sellers, (v) all right, title, and interest of the Sellers in each owned real property and under each real property lease which is an Assumed Contract (as defined below), (vi) all of the documents that are used or useful in, held for use in or intended to be used in, or that arise primarily out of, the Business, including any customer lists, vendor lists or supplier lists and financial and/or accounting books and records (vii) all Assumed Contracts, (viii) all insurance proceeds, including any insurance proceeds from or with respect to any third party property or casualty insurance, in each case of this clause (viii), to the extent received or receivable by any of the Sellers in respect of the Business or the Purchased Assets, (ix) all general intangibles of the Sellers, (x) all goodwill associated with the Purchased Assets, (xi) all claims, causes of action, and rights of recovery related to the Purchased Assets, including against counterparties to the Assumed Contracts, actions arising under chapter 5 of the Bankruptcy Code, and for taxes relating to the Purchased Assets or the Business, (xii) any permits, licenses, certificates or similar documents from any governmental entity, in each case, to the extent transferrable, (xiii) any equity interests held by Zero Manufacturing, including 100% of the equity interests of Zero Cases (UK) Limited and Zero Cases Europe Limited (collectively the "Zero Equity Interests")[4], (xiv) all of the rights and claims of any Seller for preference or avoidance actions available to any Seller under the Bankruptcy Code, of whatever kind or nature, including, without limitation, those set forth in Sections 544 through 551 and any other applicable provisions of the Bankruptcy Code, against any party asserting claims against any Seller, and any related claims and actions arising under such sections by operation of law or otherwise, including any and all proceeds of the foregoing (other than Excluded Avoidance Actions (as defined below)), and (xv) any claim, right, or interest in any credit, refund, rebate, abatement, or other recovery relating to the Purchased Assets or the Business, for taxes or otherwise, including those arising under the Assumed Contracts; provided, however, that, the Purchaser may, in its sole discretion, elect to exclude the Zero Equity from the purchase of the Purchased Assets, by written notice to the Sellers, and, in such event, the Zero Equity shall be an Excluded Asset. |
| **Excluded Assets** | The Purchased Assets shall not include the following: (i) stock certificates and/or membership interest certificates of the subsidiaries of the Company and records regarding same, (ii) minute books, |

---

[4] To the extent the Zero Equity Interests are not acquired and subject to the limitations and amounts set forth in the wind-down budget, Wind-Down Expenses to be funded for these entities through, and a specific line item for such Wind-Down Expenses to be reflected in, the wind-down budget.

|  |  |
|---|---|
|  | (iii) contracts, leases and other obligations of the Sellers that are not Assumed Contracts, (iv) equity securities of, or ownership in, the Subsidiaries of the Company, (v) director and officer insurance policies and claims thereunder, (vi) all of the rights and claims of any Seller for preference or avoidance actions available to any Seller under the Bankruptcy Code, of whatever kind or nature, including, without limitation, those set forth in Sections 544 through 551 and any other applicable provisions of the Bankruptcy Code, against any party asserting claims against any Seller, and any related claims and actions arising under such sections by operation of law or otherwise, including any and all proceeds of the foregoing, in each case, to the extent exclusively related to the venders set forth on a schedule to be attached to the Asset Purchase Agreement (which schedule shall be acceptable to the Purchaser and the Sellers in their sole and absolute discretion) (the "Excluded Avoidance Actions"), (vii) any assets owned by Columbus and (viii) any other assets specified as such in the Asset Purchase Agreement (collectively, the "Excluded Assets"); provided, however, that, the Purchaser may, in its sole discretion, elect to exclude the Zero Equity from the purchase of the Purchased Assets, by written notice to the Sellers, and, in such event, the Zero Equity shall be an Excluded Asset. |
| **Assumed Liabilities / Excluded Liabilities** | "Assumed Liabilities" shall include only the following liabilities of the Sellers: (i) all liabilities arising out of the operation of the Purchased Assets to the extent arising exclusively from and after Closing Date, (ii) all liabilities under the Assumed Contracts to the extent arising exclusively from and after the Closing Date; provided, however, that the cure amounts owing under the Assumed Contracts pursuant to section 365(b) shall be an Assumed Liability (such cure amounts, the "Cure Costs") up to a maximum aggregate amount of $3,000,000 (the "Cure Cap"),[5] (iii) certain trade payables to the extent, and solely to the extent, related to the Purchased Assets and incurred in the ordinary course of the Sellers' Business during the Chapter 11 Cases and in an amount not to exceed the amount set forth in the Approved Budget (as defined in, and as agreed by the Supporting |

---

[5] The Company will provide a schedule setting forth its good faith estimate of the Cure Costs as of the signing date, which schedule will include amounts of the estimated Cure Costs for each Assumed Contract. In the event that the actual aggregate Cure Costs for all of the Assumed Contracts exceeds the Cure Cap at closing, then each Assumed Contract that has a Cure Cost that exceeds the estimated Cure Cost for such Assumed Contract set forth on the schedule shall be removed from the schedule (and therefore not be an Assumed Contract and shall be excluded from and reduce the aggregate amount of Cure Costs set forth on such schedule (including the resulting Cure Cap)) and shall be an Excluded Contract and an Excluded Liability (i.e., the Purchaser shall not be required to assume any contract for which the Cure Cost exceeds the estimated Cure Cost for such contract set forth on the schedule) unless the Purchaser elects, in its sole and absolute discretion, to keep such Assumed Contract on the schedule and, if the Purchaser so elects to keep any such Assumed Contracts on the schedule, then the Purchaser shall be liable for all Cure Costs of such Assumed Contracts notwithstanding that the Cure Cap may be exceeded. Appropriate carveouts to the Company's representations (e.g., sufficiency of assets) will be added such that the removal of an Assumed Contract from the schedule will not cause the representations to be untrue or the closing condition relating to the accuracy of representations as of the Closing Date not to be satisfied; provided that the representation as to Cure Costs was not breached as of signing.

|  |  |
|---|---|
|  | Holders pursuant to the terms of, the DIP Facility, the "<u>Approved Budget</u>") with respect thereto or otherwise consented to by the Purchaser, in its sole and absolute discretion, (iv) certain trade payables to the extent, and solely to the extent, related to the Purchased Assets and incurred in the ordinary course of the Sellers' business prior to the Petition Date set forth on a schedule to be attached to the Asset Purchase Agreement (which schedule shall be acceptable to the Purchaser in its sole and absolute discretion) and not in excess of a maximum amount to be agreed by the Purchaser, in its sole and absolute discretion (provided that any such trade payables shall be subject to Purchaser's right to dispute, object to, and/or enter into a settlement with respect to any such trade payable and, in the event of a dispute with respect to a trade payable, such trade payable may be removed from such schedule, at the Purchaser's sole and absolute discretion, and shall as a result be an Excluded Liability), and (v) tax liabilities relating to the Purchased Assets or the Business for the tax period (or the portion thereof) beginning after the Closing Date and any transfer or similar tax payable with respect to the Sale and required by applicable law to be paid by Purchaser, but excluding for the avoidance of doubt, (x) all income tax or similar liabilities of the Sellers for any tax period, (y) all transfer and other similar taxes payable with respect to the Sale that are not required by applicable law to be paid by Purchaser, and (z) any tax or similar liability related to the Excluded Assets. For the avoidance of doubt, the Purchaser shall assume any transfer or other similar taxes payable with respect to the Sale that are required by applicable law to be paid by Purchaser.

All pre-petition and post-petition liabilities, including, but not limited to, pre-petition and post-petition liabilities related to Columbus, other than Assumed Liabilities shall be "<u>Excluded Liabilities</u>". |
| **Assumed Contracts / Excluded Contracts** | "<u>Assumed Contracts</u>" shall include all of the Sellers' contracts, leases, and other written obligations, set forth on a schedule to be attached to the Asset Purchase Agreement, subject to the right of Purchaser to amend such schedule at any time prior to the Auction to remove any contract, lease, or other written obligation from such schedule (an "<u>Excluded Contract</u>"); provided, however, that Purchaser has the right at any time after the commencement of the Auction (as defined below) and prior to the date on which the Bankruptcy Code otherwise would require a determination to assume or reject such contract or lease to (i) elect to designate any contract, lease, or other written obligation which has not been rejected by the Sellers to be an Assumed Contract, and (ii) to remove an Assumed Contract from the schedule; provided, further, however, that in the event the Auction does not result in any Qualified Bid (other than the Qualified Bid of the Holders contemplated hereby), Purchaser shall have the right at any time prior to the Closing Date to (i) elect to designate any contract, lease, or other written obligation which has not been rejected by the Sellers to be an Assumed Contract, and (ii) to remove an Assumed Contract from the schedule. Purchaser shall not assume or otherwise have any liability with respect to any Excluded Contract. Purchaser shall |

| | |
|---|---|
| | cooperate with the Sellers in providing information sufficient to satisfy the parties' obligations under section 365(b)(1)(C). |
| **Sellers Representations and Warranties in Asset Purchase Agreement** | Sellers will make customary limited representations and warranties in the context of section 363 credit bid transactions, including without limitation representations and warranties concerning: organization, subsidiaries, power and authority, noncontravention and consents, good faith estimate of Cure Costs as of the signing date, related party transactions, regulatory approvals, litigation, material contracts, compliance with laws, permits, environmental matters, sufficiency of assets, employee and pension matters, health and safety matters, real property, intellectual property, taxes, no liability to brokers, and such other matters as Purchaser may reasonably request. Sellers' representations and warranties shall not survive past the Closing Date. |
| **Purchaser Representations and Warranties in Asset Purchase Agreement** | Purchaser will make customary limited representations and warranties in the context of section 363 credit bid transactions, including without limitation representations and warranties concerning: organization, power and authority, noncontravention and consents, that it will on the Closing Date have sufficient cash to fund the cash portion of the Purchase Price, no liability to brokers, and such other matters as the Company may reasonably request. Purchaser's representations and warranties shall not survive past the Closing Date. |
| **Sellers Covenants** | Sellers will make customary and other negative and operating covenants in the context of section 363 credit bid transactions, including without limitation covenants concerning: (i) conduct of business (subject to each party's compliance with the terms of the DIP Facility, including the Approved Budget contemplated thereby and the funding of loans contemplated thereby, in each case, in accordance with the terms of the DIP Facility); (ii) provision of financial and operating data, and access to the Sellers' personnel, facilities, books, contracts and records; (iii) best efforts to obtain approval as promptly as possible of the Sale Procedures (as defined below) and a motion (the "Sale Motion") seeking the entry of orders in the Chapter 11 Cases in form and substance satisfactory to the Sellers, the Supporting Holders and the Purchaser (the "Sale Order") approving the sale to Purchaser, and other case-management undertakings (e.g., agreement not to file motions in the Chapter 11 Cases directly relating to or directly affecting the Purchased Assets or the Company's ability to timely consummate the Sale contemplated hereby without providing Purchaser and its advisors and counsel a reasonable opportunity to review and consult as and to the extent that such prior review is reasonably permissible under the circumstances, it being understood that the foregoing cooperation provision shall not cause the Sellers to violate their fiduciary duties as debtors in possession or otherwise cause them to be unable to satisfy their obligations under applicable bankruptcy rules and procedures or other applicable law); (iv) the requirement to obtain the consent of the Purchaser prior to the Sellers' entry into new, or renewal of existing, contracts after execution of the Asset Purchase Agreement having a term of one year or greater or that |

|  |  |
|---|---|
| **Sale Procedures** | may require the Sellers to incur potential liabilities of $500,000 or greater per year; (v) notice of certain events; (vi) further assurances regarding administration, accounts receivable and similar items; and (vii) such other covenants as Purchaser may reasonably request. |

**Sale Procedures** The Sale shall be conducted in accordance with sale procedures in the form attached as <u>Annex B</u> hereto and as approved by the Bankruptcy Court (the "<u>Sale Procedures</u>").

**Sale Milestones**

- As soon as reasonably practicable after the commencement of the Chapter 11 Cases (the "<u>Petition Date</u>"), but in no event later than 5 days prior to the date of the Sale Procedures Hearing: (a) the Sellers and Purchaser shall have entered into and filed an asset purchase agreement (as may be amended from time to time in accordance therewith, the "<u>Asset Purchase Agreement</u>"), which shall (i) be consistent in all material respects with this Term Sheet and (ii) be in form and substance acceptable to the Sellers and Purchaser; (b) the Sellers shall have filed a proposed Sale Order providing for, among other things, the sale of the Purchased Assets to the Purchaser free and clear of liens, claims and encumbrances (except Assumed Liabilities) pursuant to section 363(f) of the Bankruptcy Code and "good faith" protections to the Purchaser pursuant to section 363(m) of the Bankruptcy Code, which Sale Order shall (i) be consistent in all material respects with this Term Sheet and (ii) be in form and substance acceptable to the Sellers and Purchaser; and (c) the Sellers shall have filed appropriate supporting declarations, in form and substance reasonably acceptable to the Purchaser and which identifies Purchaser as the stalking horse for the Purchased Assets.

- Within 5 business days following the Petition Date, the Sellers shall have filed (i) the Sale Motion and (ii) a proposed order approving the Sale Procedures.

- Within 30 days of the Petition Date, the Bankruptcy Court shall have (i) held a hearing to consider approval of the Sale Procedures (the "<u>Sale Procedures Hearing</u>") and (ii) entered an order approving the Sale Procedures, which order shall be in form and substance acceptable to the Sellers and Purchaser (the "<u>Sale Procedures Order</u>").

- Pursuant to the Sale Procedures Order, any and all Qualified Bids shall be submitted on or before the 50th day after the Petition Date (the "<u>Bid Deadline</u>").

- If any other Qualified Bid is submitted prior to the Bid Deadline, the Sellers shall have commenced the Auction on or before the 55th day after the Petition Date.

- On or before the 60th day after the Petition Date (or the 55th day, if no other Qualified Bids are submitted prior to the Bid Deadline),

7

|  |  |
|---|---|
|  | the Bankruptcy Court shall have entered the Sale Order, which shall be in form and substance acceptable to the Sellers and Purchaser. |
|  | • On or before the 75th date after the Petition Date, the Closing Date would occur. |
| **Purchase Price Allocation** | Within one hundred twenty (120) days after the Closing Date, the Purchaser shall deliver to the Sellers a schedule (the "Allocation Schedule") allocating the Purchase Price and any other items that are treated as additional purchase price for tax purposes among the Purchased Assets; provided however, that either (a) such Allocation Schedule shall be consistent with the principles to be attached as an exhibit to the Asset Purchase Agreement or (b) such Allocation Schedule shall be neutral to the Debtors' estates. The Allocation Schedule shall be reasonable and shall be prepared in accordance with Section 1060 of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder. |
| **Expense Reimbursement** | The Sale Procedures Order shall contain language, in form and substance acceptable to the Supporting Holders, the Sellers and Purchaser, approving the following provisions:<br><br>Expense Reimbursement. On the earlier of (a) the termination of the Asset Purchase Agreement by either the Purchaser or the Sellers pursuant to its terms in connection with a Winning Bid and (b) on the closing of a bid other than Purchaser's offer to purchase the Purchased Assets pursuant to the Asset Purchase Agreement, the Company shall reimburse, in immediately available funds, the Purchaser's documented, reasonable, third-party out-of-pocket costs, fees and expenses (including legal, financial advisory, accounting and other similar costs, fees and expenses) incurred, in each case, in connection with the formation and operation of Purchaser, this Term Sheet, the Asset Purchase Agreement, or the Sale (including such amounts incurred prior to the formation of Purchaser by or at the direction of the Supporting Holders) (collectively referred to as the "Expense Reimbursement"); provided, however, that (i) in the event of a termination described in clause (a) above, the Sellers and the purchaser under the Winning Bid shall be required to pay only up to $250,000 on account of the Expense Reimbursement on termination; (ii) it shall be a condition to any other bid, including any Qualified Bid, that the purchaser under such bid or Qualified Bid pay, and any such purchaser shall pay, such Expense Reimbursement, in immediately available funds, directly to the Purchaser pursuant to the terms hereof; and (iii) in the event that the Asset Purchase Agreement is terminated, other than on account of a breach by the Purchaser under the Asset Purchase Agreement and other than as contemplated by clauses (a) or (b) above, then the Company shall be liable for the Expense Reimbursement and shall pay such Expense Reimbursement as promptly as permitted by the Bankruptcy Court. |

|  |  |
|---|---|
|  | The full amount of the anticipated Expense Reimbursement shall be afforded super priority administrative expense protection pursuant to sections 507 and 503(b) of the Bankruptcy Code (subject to any carve-out provided in the DIP Financing Order). |
| **Closing Conditions** | The Asset Purchase Agreement shall contain, among other things, the following conditions to the obligation of Purchaser to consummate the Sale (in addition to other conditions that may be agreed upon by Purchaser and the Sellers in the Asset Purchase Agreement): |

- Entry of the Sale Order in form and substance, including with respect to all findings of fact and conclusions of law, satisfactory to the Purchaser and the Sellers and such Sale Order not being subject to any stay or appeal;

- No injunctions or other order or similar ruling or determination of any governmental authority preventing or delaying the consummation of the Sale;

- No Event of Default as defined in the DIP credit agreement shall have occurred thereunder which (i) gives the secured parties thereunder a termination right, (ii) as a result of which, such secured parties shall have accelerated the repayment obligations of the Company and (iii) has not been waived;

- Lien releases and termination statements with respect to all liens (other than permitted liens) on the Purchased Assets; provided, however, that lien releases shall not be required with respect to liens that are both (i) released by the Sale Order and (ii) not required to be released at Closing pursuant to lien releases and termination statements in connection with a financing or debt facility;

- The Purchaser shall have obtained all regulatory approvals required or appropriate to operate the Business;

- Accuracy, in all material respects, of the Sellers' representations and warranties on the Closing Date;

- No material breach of the Sellers' covenants;

- The Cure Costs shall not exceed the Cure Cap (without giving effect to the Purchaser's election to add any Assumed Contracts to the Assumed Liabilities after the date on which the Asset Purchase Agreement is executed by the parties as described in the provisos set forth in the "Assumed Contracts / Excluded Contracts" section hereof); and

- No material adverse change (as customarily defined in section 363 sales) shall have occurred, it being understood that it shall not be a material adverse change if the Purchased Assets are subject to a tax lien in an amount not to exceed $3,400,000 pursuant to that certain agreement by and between the United States Internal Revenue Service (the "IRS") and Metal Technology Solutions

9

|  |  |
|---|---|
|  | Inc. ("MTS") whereby, among other matters, the IRS has agreed not to seek enforcement against MTS for its failure to pay certain taxes in exchange for MTS agreement to pay such taxes in agreed upon installments. |
| **Termination** | The Asset Purchase Agreement will contain customary termination provisions, including: |
|  | (i) by agreement of each of the Sellers and Purchaser; |
|  | (ii) if the closing does not occur on or prior to August 29, 2016, provided that the Purchaser can extend such date in its sole discretion; |
|  | (iii) by notice from Purchaser: |
|  |     (1) upon a material breach by Sellers of covenants of the Asset Purchase Agreement or the Sale Order; |
|  |     (2) upon any Seller entering into any material agreement, including any Definitive Agreement, in furtherance of or with respect to a Winning Bid with any party other than Purchaser; |
|  |     (3) upon the dismissal or conversion of any of the Chapter 11 Cases; |
|  |     (4) upon the appointment of a trustee or examiner with expanded powers; |
|  |     (5) upon failure to meet Sale Milestones (unless waived by the Purchaser); or |
|  |     (6) upon permanent denial of required regulatory approvals. |
| **Sale Proceeds** | The cash portion of the Purchase Price to be used to pay Wind-Down Expenses and unpaid retained professional fees shall be held in the Wind-Down and Professional Escrow Account and disbursed pursuant to the terms of the to be agreed-upon budget for Wind-Down Expenses and retained professional fees. |
| **Definitive Agreements and Due Diligence** | The Asset Purchase Agreement and such other definitive agreements for the acquisition of the Purchased Assets as the parties mutually agree upon (collectively, the "Definitive Agreements") shall memorialize this Term Sheet and contain such representations, warranties, covenants, conditions, and indemnities as set forth herein and as otherwise may be acceptable to the parties. The signing of the Definitive Agreements will be subject to, among other things, the negotiation by the Sellers and Purchaser of satisfactory terms and conditions for the Definitive Agreements. For the avoidance of doubt, this Term Sheet is non-binding and in the event of any inconsistency between this Term Sheet and any Definitive Agreement, such Definitive Agreement shall govern. |

**Annex A**

**Supporting Holders**

1. GoldenTree Asset Management LP (not in its own capacity but solely on behalf of certain funds who hold notes under the Indenture and to whom it acts as investment manager).

2. Phoenix Investment Adviser LLC (not in its own capacity but solely on behalf of certain funds who hold notes under the Indenture and to whom it acts as investment manager).

3. Dalton Investments LLC (not in its own capacity but solely on behalf of certain funds who hold notes under the Indenture and to whom it acts as investment manager).

4. Rotation Capital Management, LP (not in its own capacity but solely on behalf of certain funds who hold notes under the Indenture and to whom it acts as investment advisor).

5. Wayzata Opportunities Fund III, L.P.

6. Wayzata Opportunities Fund Offshore III, L.P.

7. Concise Capital Management, LP (not in its own capacity but solely on behalf of certain funds who hold notes under the Indenture and to whom it acts as investment advisor).

8. Nomura Corporate Research and Management Inc. (not in its own capacity but solely on behalf of certain funds who hold notes under the Indenture and to whom it acts as investment advisor).

9. Robert W. Baird & Co. (not in its own capacity but solely on behalf of certain funds who hold notes under the Indenture and to whom it acts as investment advisor).

**<u>Annex B</u>**

**Sale Procedures**

**[OMMITED]**