IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: : | |
| : | CHAPTER 11 |
| Constellation Enterprises LLC, *et al.*[1], : | |
| : | Case No. 16-11213(CSS) |
| : | |
| : | Hearing Date:  June 24, 2016 @ 2:00 p.m. |
| Debtors. : | UST Objection Deadline:  June 21, 2016 @ 10:00 a.m. |

**UNITED STATES TRUSTEE'S OBJECTION TO MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (B) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (C) GRANTING ADEQUATE PROTECTION TO THE ADEQUATE PROTECTION PARTIES, (D) SCHEDULING A FINAL HEARING, AND (E) GRANTING RELATED RELIEF (D.I. 13)**

Andrew R. Vara, Acting United States Trustee for Region 3 ("U.S. Trustee"), by and through his counsel, hereby files this Objection to Motion For Entry Of Interim And Final Orders (A) Authorizing The Debtors To Obtain Postpetition Secured Financing Pursuant To Section 364 Of The Bankruptcy Code, (B) Authorizing The Debtors To Use Cash Collateral, (C) Granting Adequate Protection To The Adequate Protection Parties, (D) Scheduling A Final Hearing, And (E) Granting Related Relief (D.I. 13; the "Motion").  In support of the Objection, the U.S. Trustee states as follow:

**INTRODUCTION**

1.    There appears to be a significant risk in these cases that the Debtors are administratively insolvent.  While the proposed DIP facility provides a budget to pay most

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, where applicable are: Constellation Enterprises LLC (9571); JFC Holding Corporation (0312); The Jorgensen Forge Corporation (1717); Columbus Holdings Inc. (8155); Columbus Steel Castings Company (8153); Zero Corporation (0538); Zero Manufacturing, Inc. (8362); Metal Technology Solutions, Inc. (7203); Eclipse Manufacturing Co. (1493); and Steel Forming, Inc. (4995).  The debtors' mailing address is located at 50 Tice Boulevard, Suite 340, Woodcliff Lakes, NJ  07677.

administrative claims incurred prior to the sales of the Debtors' assets, one type of creditor – the Debtors' employees – do not appear to be sufficiently protected.

2.  One of the Debtors in these cases, Zero Manufacturing, Inc., maintains a self-funded health insurance plan for its employees.  It does not appear that the Debtors, through the DIP facility, have ensured that all claims under this self-funded plan that accrue post-petition will be assured of payment.

3.  Administrative claimants may not be forced to fund a chapter 11 case for the benefit of secured lenders, with the substantial risk of administrative insolvency and conversion to chapter 7 after the secured lenders have reaped the benefits of a Section 363 sale.  This is especially true in a case like this one, where the Debtors maintain a self-funded health insurance plan.  Employees, who are paying premiums post-petition and likely have not been informed of the risk of non-payment of claims, must be assured of payment of all administrative claims under such plan.  Absent (i) a carve-out for accrued but unpaid claims (through the end of fully-paid policy period) after a Carve Out Trigger Notice has been provided; and (ii) a sufficient wind-down budget, agreed to as part of the DIP financing agreement and cash collateral stipulations, to pay such claims after the sale of the Debtors' assets, this case appears to be administratively insolvent from the start, and the Motion should be denied and the cases converted.

### Jurisdiction and Standing

4.  Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to Title 11 of the United States Bankruptcy Code. Section 586(a)(3)(G) mandates that the U.S. Trustee monitor "…the progress of cases under title 11" and further requires that the U.S. Trustee take "such actions as the United States trustee

deems to be appropriate to prevent undue delay in such progress."

5. Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard in this matter.

### Statement of Facts

6. On May 16, 2016 and May 17, 2016 (together, the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their assets and property as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

7. On the Petition Date, the Debtors filed the Motion. On May 23, 2016, the Court entered an order approving the Motion on an interim basis (the "Interim Order") [D.I. 71]. On June 9, 2016, the Court entered a second order approving the Motion on an interim basis (the "Second Interim Order") [D.I. 192].

8. Zero maintains a partially self-funded health insurance plan for the benefit of its employees.[2] *See* Debtors' Motion For Interim And Final Orders (A) Authorizing, But Not Directing, Debtors To Pay Certain Prepetition (I) Wages, Salaries And Other Compensation, (II) Reimbursable Employee Expenses, And (III) Employee Medical And Similar Benefits; And (B) Authorizing Financial Institutions To Honor All Related Checks And Electronic Payment Requests, p. 15 [D.I. 7].

---

[2] Columbus Steel Castings Company also maintained a self-funded health insurance plan. The Debtors have informed the U.S. Trustee that it has purchased a policy to ensure payment of all claims that accrued, but remain unpaid, under the self-funded plan.

9. Upon information and belief, employees will pay premiums for these plans post-petition. Claims that accrue under these plans can take months to file, be processed, and be paid.

10. The DIP budget does not appear to ensure payment in full of all employee claims under the self-funded health insurance plan, either in the event that the cases are unsuccessful and the DIP lender issues a Carve Out Trigger Notice, or after the closing of the sale(s) of the Debtors' assets.

11. The Debtors' professionals have negotiated both a carve-out for professional fees including both those fees incurred prior to a Carve Out Trigger Notice and those that accrue after such notice, ensuring payment of administrative expense claims for professionals. These same protections are not afforded to employee health claims or wind-down expenses.

## Legal Argument

12. The Debtors have apparently entered these cases administratively insolvent. Absent an agreement by the lenders to fund all administrative expenses, including all pre-sale claims of employees under the self-funded health insurance plans and all post-sale administrative expense claims, these cases may be run solely for the benefit of the secured lenders at the expense of administrative claimants.

13. Several courts in this district and others have concluded that adequate provision must be made to assure that administrative expenses will be paid in full before debtor-in-possession financing can be approved. In particular, one set of administrative claimants may not be preferred over other claimants.

14. In *In re Townsends, Inc., et al.,* Case No. 10-14092 (CSS) (Bankr. D. Del.), the committee objected to the entry of a final DIP financing order, arguing, in part, that the debtors' chapter 11 cases were administratively insolvent because the budget did not include sufficient funding to pay all the administrative claims. Of particular concern to the *Townsends* court was the fact that the debtors had proposed to pay most administrative claims in full – with the exception of section 503(b)(9) claims. After learning that the budget only provided $1.8 million for payment of an estimated $16 million in 503(b)(9) claims, the court stated as follows:

> Well, we've got a problem. Not going to run an administratively insolvent estate. There are benefits to the current administrative claims that are accruing. There are benefits to the unsecured creditors. But it can't be done on the back of the 503(b)(9) admin claims, which are admin claims. Congress has made that determination. So certainly I would have a problem running any case that was administratively insolvent. But one that is both administratively insolvent and prefers one set of administrative creditors over another is doubly troubling. So that's -- well, I'm not going to do it. . . . [T]o go in with a path forward that indicates . . . that a certain type of administrative expense claim won't get paid in full but yet others will, I just – I can't run that kind of case.

Hearing Transcript, *In re Townsends, Inc., et al.,* Case No. 10-14092 (CSS) (Bankr. D. Del.), Jan. 21, 2011 at 23:25–24:9; 24:18-22.

15. In the present case, the Debtors' DIP budget does not ensure the payment of Zero's employees health claims that accrue post-petition but are often not processed and paid for several months. Unlike the Debtors' professionals – who are ensured payment of their accrued but unpaid professional fees via the carve-out, the DIP budget only includes, upon information and belief, the payment of health claims actually processed during the budget period.

16. This is especially problematic where the employees are making post-petition

payments of premiums, and are likely not informed that there is a risk that claims made under these policies may not be paid.

17. If the lenders wish to utilize this court to obtain the benefits of Chapter 11, they must provide for a sufficient carve-out (or wind-down budget) to cover the costs of administrative expense claims. Absent such agreement, these cases are administratively insolvent and must be converted to cases under Chapter 7. Administrative claimants, including employees, cannot be required to fund these cases for the benefit of the lenders.

18. Chapter 11 of the Bankruptcy Code is designed to allow a debtor-in-possession to retain management and control of the debtor's business operations. *See In re Eurospark Indus.*, 424 B.R 621, 627 (Bankr. E.D.N.Y. 2010). As such, a debtor-in-possession owes fiduciary duties to the bankruptcy estate and must, among other things, "protect and . . . conserve property in [its] possession for the benefit of creditors" and "refrain[] from acting in a manner which could damage the estate, or hinder a successful reorganization of the business." *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990) (internal quotations and citation omitted).

19. The Debtors must ensure that their administrative creditors are paid in full. Where a debtor comes into chapter 11 administratively insolvent or likely to be administratively insolvent, to retain management and control of the debtor's business operations, the debtor must ensure for an adequate budget – including a wind-down budget – from the debtor's secured lenders, to protect administrative creditors and prevent a situation where the secured lender reaps the benefit of the chapter 11 case, and the unpaid administrative creditors are faced with conversion to a chapter 7 case or dismissal, after all of the debtor's assets are sold.

20. For these same reasons, the requested waiver of sections 506(c) or 105(a) of the Bankruptcy Code, without an agreement to fund all administrative expenses of these cases, is improper. If lenders wish to maximize the value of their collateral through the chapter 11 process, the cost of that process must be paid.

21. The U.S. Trustee also has many of the same concerns expressed by the Committee in its Preliminary Objection [D.I. 117]. In particular the U.S. Trustee objects to the improper release and indemnity provisions and the Milestones. The U.S. Trustee incorporates the Committee's arguments on these points as though set forth herein.

## Conclusion

22. Because these cases are administratively insolvent, the Motion must be denied absent an agreement with the lenders to fund a reasonable wind-down or carve-out budget, which must include the payment in full of all administrative expense claims relating to employee claims under the self-funded health insurance plan. Furthermore, the release and indemnity provisions are overly broad and unwarranted, and they must be limited prior to approval of the Motion. The Milestones are overly aggressive and do not provide sufficient time for the Debtors to maximize the value of their assets.

WHEREFORE, the United States Trustee requests that this Court deny the Motion.

        **Andrew R. Vara,**
        **Acting United States Trustee, Region Three**

Dated: June 20, 2016    **BY:** _____/s/_____
        Linda J. Casey, Esquire
        Trial Attorney
        J. Caleb Boggs Federal Building
        844 King Street, Suite 2207, Lockbox 35
        Wilmington, DE 19801
        (302) 573-6491
        (302) 573-6497 (Fax)