**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 11 |
| Constellation Enterprises LLC, *et al.*[1], | : | |
| | : | Case No. 16-11213(CSS) |
| | : | |
| | : | **Hearing Date: June 24, 2016 @ 2:00 p.m.** |
| Debtors. | : | **UST Objection Deadline: June 21, 2016 @ 5:00 p.m.** |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' MOTION FOR (I) AN ORDER ESTABLISHING BIDDING PROCEDURES AND GRANTING RELATED RELIEF AND (II) AN ORDER APPROVING THE SALE OF ASSETS (D.I. 88)**

Andrew R. Vara, Acting United States Trustee for Region 3 ("U.S. Trustee"), by and through his counsel, hereby files this Objection to Debtors' Motion For (I) An Order Establishing Bidding Procedures And Granting Related Relief And (II) An Order Approving The Sale Of Assets (D.I. 41; the "Motion"). In support of the Objection, the U.S. Trustee states as follow:

**Jurisdiction and Standing**

1. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to Title 11 of the United States Bankruptcy Code. Section 586(a)(3)(G) mandates that the U.S. Trustee monitor "…the progress of cases under title 11" and further requires that the U.S. Trustee take "such actions as the United States trustee deems to be appropriate to prevent undue delay in such progress."

2. Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard in this

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, where applicable are: Constellation Enterprises LLC (9571); JFC Holding Corporation (0312); The Jorgensen Forge Corporation (1717); Columbus Holdings Inc. (8155); Columbus Steel Castings Company (8153); Zero Corporation (0538); Zero Manufacturing, Inc. (8362); Metal Technology Solutions, Inc. (7203); Eclipse Manufacturing Co. (1493); and Steel Forming, Inc. (4995). The debtors' mailing address is located at 50 Tice Boulevard, Suite 340, Woodcliff Lakes, NJ 07677.

matter.

**Statement of Facts**

3. On May 16, 2016 and May 17, 2016 (together, the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their assets and property as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

4. On May 25, 2016, the Debtors filed the Motion. The Motion seeks an order authorizing the bidding procedures for the sale of substantially all of the Debtors' assets other than the assets of the Columbus Debtors.[2] At the first day hearing, the Debtors stated that, while there was a lengthy prepetition marketing process for the sale of the Columbus Debtors' assets, there was no prepetition marketing process to sell any of the other Debtors' assets.

5. The proposed Purchaser is a newly formed entity organized by the Supporting Noteholders. The Debtors seek authority to provide the Purchaser with an expense reimbursement of up to $250,000.

6. The Debtors and the Purchaser have not executed and filed the Stalking Horse APA. The term sheet attached to the motion is not binding, nor does it contain a calculable purchase price.

7. Under the proposed time-frame as set forth in the motion, the Auction will be held less than 60 days after the case was filed, with bids due less than two weeks after entry of the bidding procedures order.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion, the proposed bidding procedures or the term sheet, as applicable.

## **Legal Argument**

### I. The Sale Must Be Fully Marketed

8. Section 363(b)(1) of the Bankruptcy Code permits a debtor-in-possession to sell property of the estate outside the ordinary course of business. The debtor-in-possession bears the burden of proof to show that the sale is in the best interests of the creditors and the estate:

> The sale of assets which is not in the debtor's ordinary course of business requires proof that: (1) there is a sound purpose for the sale; (2) the proposed sale price is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the buyer has acted in good faith. The element of 'good faith' is of particular importance as the Third Circuit made clear in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986).

*In re Exaris Inc.*, 380 B.R. 741 (Bankr. Del. 2008) (some citations omitted).

9. Initially, the Court must determine that the bidding procedures will bring the best and highest price for the debtors' assets. The debtors must show that the assets have been fully marketed and that the sale is sufficiently publicized in order to prove that the assets will be sold for a fair and reasonable price. *See In re Abbotts Dairies, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).

10. Here, there were no efforts to market the assets prepetition. Without a robust prepetition marketing process, the postpetition marketing process must be sufficient to encourage competitive bidding and maximize value. The short time frame proposed by the Debtors appears insufficient to ensure a true market test for the value of the assets.

### II. The Expense Reimbursement is Unnecessary.

11. To award a break-up fee (or expense reimbursement) to a potential bidder, the court must determine that the fee was an actual and necessary cost and expense of preserving the

estate. *See In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527 (3d Cir. 1999). In *O'Brien,* the Third Circuit Court of Appeals held that "the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *Id.* at 535.

12. As recognized by the Third Circuit in *O'Brien*:

> [E]ven if the purpose for the break-up fee is not impermissible, the break-up fee may not be needed to effectuate that purpose. For example, in some cases a potential purchaser *will bid whether or not break-up fees are offered* . . . . In such cases, the award of a break-up fee cannot be characterized as necessary to preserve the value of the estate.

181 F.3d at 535 (emphasis added).

13. In the present case, the expense reimbursement should not be approved because it is not necessary to induce the Purchaser, an entity formed by the Supporting Noteholders, to be the Stalking Horse. Furthermore, the Purchaser should be familiar with the Debtors and not need to incur significant expenses in negotiating the credit-bid sale agreement.

14. In addition, the Purchaser has not yet entered into an executed Stalking Horse APA, which can be shopped around to potential competing bidders. The purpose of a break-up fee and expense reimbursement is to induce the execution of an APA that can be utilized to encourage other bidders to participate in a sale process. The delay in executing an APA (with its attendant uncertainty) will not encourage bidders to participate, and will leave bidders uncertain as to what they are bidding against.

15. This is especially true where the proposed purchase price cannot be calculated, even as set forth in the term sheet. Potential bidders will be unable to determine whether to participate in the sale process if they do not know what the proposed purchase price is.

## III. There Must Be A Sufficient Wind-Down Budget

16. The proposed purchase price includes:

> cash to be paid into a separate escrow account (the "Wind-Down and Professional Escrow Account") in an amount sufficient to satisfy the amounts to be paid following the Closing Date pursuant to the terms of the to be agree-upon budget for Wind-Down Expenses and unpaid retained professional fees; provided, however, that such expenses and fees and the corresponding amounts for such expenses and fees set forth in or contemplated by the wind-down budget, and the cash to be paid pursuant to this clause (ii), shall be reduced to the extent any such fees and expenses are assumed or included as Assumed Liabilities,

Term sheet at p. 2.

17. The term sheet further provides:

> "Wind-Down Expenses" means the out-of-pocket costs and expenses that Sellers are required to incur in connection with winding down their bankruptcy estates, in each case, to the extent such costs and expenses are incurred from and after the Closing Date and as set forth in the budget to be agreed upon between the Purchaser and the Company prior to Closing Date. The budget shall be limited to the 'burial' costs required to shut down the businesses/entities and shall exclude any other expenses.

18. If these estates are administratively insolvent, as they appear to be, the Wind-Down budget should be negotiated and approved prior to the sale process. Not only do potential bidders need to know what the purchase price is, but the wind-down budget must be sufficient to pay, at a minimum, all administrative expense claims. These cases cannot be run for the benefit of the Supporting Noteholders (who have formed the Purchaser for their behalf), while giving the Purchaser discretion to determine which administrative expenses it is willing to pay, and which it is not.

## IV. Miscellaneous Objections

19. The U.S. Trustee has additional objections, which have been communicated to the

Debtors. The Debtors and the U.S. Trustee have discussed these objections and the parties are close to coming to resolution. To the extent resolution is not reached, the U.S. Trustee preserves its objections, including without limitation:

    a.    The notices must be drafted and served consistent with the Rules, and provide sufficient notice and due process to all interested parties.

    b.    Potential bidders should not be required to provide proof of financial capability prior to performing due diligence, especially in a case on such a fast track.

    c.    Payment of the expense reimbursement, if approved, must be allowed only if a sale closes with another purchaser through this auction process, and only out of the proceeds of such sale.

    d.    Bidders should be permitted to bid on each of the three Debtors' assets individually or collectively.

    e.    Unless the Supporting Noteholders hold all of the notes, they should be permitted to credit bid, if at all, only the amount of the claim owed to them.

WHEREFORE, the United States Trustee requests that this Court deny the Motion.

                        **Andrew R. Vara,**
                        **Acting United States Trustee, Region Three**

Dated: June 21, 2016      **BY:**         /s/
                                      Linda J. Casey, Esquire
                                      Trial Attorney
                                      J. Caleb Boggs Federal Building
                                      844 King Street, Suite 2207, Lockbox 35
                                      Wilmington, DE 19801
                                      (302) 573-6491
                                      (302) 573-6497 (Fax)