## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | Chapter 11 |
| | ) | |
| In re: | ) | Case No. 16-11213 (CSS) |
| | ) | |
| Constellation Enterprises LLC, *et al.*,[1] | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |
| | ) | **Re: D.I. 88** |
| | ) | |

### SUPPLEMENT TO OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION FOR (I) ORDER ESTABLISHING BIDDING PROCEDURES AND GRANTING RELATED RELIEF AND (II) ORDER APPROVING THE SALE OF THE ASSETS

The Official Committee of Unsecured Creditors (the "Committee") appointed in the cases of the above-captioned debtors and debtors-in-possession (the "Debtors"), by and through its proposed undersigned counsel, hereby submits this supplement (the "Supplement") to its objection [D.I. 284] to the *Debtors' Motion for (I) an Order Establishing Bidding Procedures and Granting Related Relief and (II) an Order Approving the Sale of the Assets* (the "Motion") [D.I. 88].[2]  In support of the Supplement, the Committee respectfully states as follows:

1.      Since the filing of the Motion, the Debtors have effectively altered the relief being sought from this Court on several occasions, both through revised proposed bidding procedures and orders filed with this Court and others circulated informally among the major parties-in-interest in these cases.

---

[1] The debtors in these cases, along with the last four digits of their federal tax identification number, are: Constellation Enterprises LLC (9571); JFC Holding Corporation (0312); The Jorgensen Forge Corporation (1717); Columbus Holdings Inc. (8155); Columbus Steel Castings Company (8153); Zero Corporation (0538); Zero Manufacturing, Inc. (8362); Metal Technology Solutions, Inc. (7203); Eclipse Manufacturing Co. (1493); and Steel Forming, Inc. (4995).  The debtors' mailing address is located at 50 Tice Boulevard, Woodcliff Lakes, NJ 07677.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2.      The Committee has been working diligently with the Debtors and other key parties-in-interest to reach a resolution with respect to the Bidding Procedures Order and Bid Procedures proposed in connection with the Motion – which has been a moving target – and significant progress has been made to date in that regard.

3.      As a result of the negotiations among the parties and changing circumstances – including the decision of members of the Ad Hoc Group[3] not to enter into a Stalking Horse Agreement with the Debtors at this time, as had been contemplated in the Motion – on June 22, 2016, the Debtors filed a revised form of the Bidding Procedures Order and Bidding Procedures [D.I. 286] and, on June 23, 2016, the Debtors sent to the key parties-in-interest a newly revised form of the Bidding Procedures Order and Bidding Procedures.

4.      While many of the Committee's issues have been addressed through such modifications, the Committee still has several fundamental issues with the current Bidding Procedures Order and Bidding Procedures.

5.      First, if the Ad Hoc Group becomes the Stalking Horse Purchaser, the Committee submits that the Stalking Horse Notice must disclose (a) the amount the Ad Hoc Group will credit bid with respect to the Subject Assets, and (b) the allocation of such credit bid with respect to each of the three business units comprising the Subject Assets.

6.      Second, if the Ad Hoc Group elects *not* to become the Stalking Horse Purchaser, but intends nevertheless to be a Bidder for the Subject Assets, the Committee believes that the Ad Hoc Group should be required to disclose, on or before the deadline for submission of non-binding indications of interest by Preliminary Interested Parties (currently proposed to be July 15, 2016), (a) the maximum amount that the Ad Hoc Group will credit bid if it ultimately

---

[3] All references herein to the Ad Hoc Group shall include any subset of, or all of the holders of notes under the Indenture, as the case may be.

determines to submit a bid or bids for the Subject Assets, (b) whether the Ad Hoc Group intends to bid for all or only a part of the Subject Assets, and (c) the allocation of such credit bid with respect to each of the business units comprising the Subject Assets with respect to which the Ad Hoc Group intends to bid.

7.      Without appropriate disclosure and allocation, the "overhang" of a potential credit bid by the Ad Hoc Group on other third-parties, who may have an interest in bidding on the Subject Assets, will chill the bidding and likely lead to a failed Sale Process.

8.      Third, the Committee's rights with respect to the alleged right of the Ad Hoc Group to credit bid in connection with the sale of the Subject Assets – whether the Ad Hoc Group is a Stalking Horse Bidder or a Qualified Bidder – must be preserved.  Thus, any rights of the Ad Hoc Group to credit bid in connection with the sale of the Subject Assets must be expressly *subject to* the Committee's Challenge Rights (as such term is defined in the First Interim DIP Order dated May 23, 2016 [D.I. 71] and the Second Interim DIP Order dated June 9, 2016 [D.I. 192]).

9.      Finally, any order entered approving the Motion must provide that, in the event a portion of the credit bid of the Ad Hoc Group is invalidated as a result of a successful challenge by the Committee of the Ad Hoc Group's underlying liens and security interests, the Ad Hoc Group must be required to pay the difference between the amount of the credit bid and the amount allowed in cash.  Requiring that the Ad Hoc Group pay the difference with the bid in cash is the only way to ensure that the Committee's Challenge Rights will be sufficiently protected and preserved.

## RESERVATION OF RIGHTS

The Committee expressly reserves its rights to raise additional or further objections to the Motion at or prior to the hearing on the Motion.

**WHEREFORE**, the Committee respectfully requests that the modifications set for herein be made to the Bidding Procedures Order and Bidding Procedures and that the Court grant the Committee such other and further relief as the Court deems just and proper.

Dated: June 24, 2016
Wilmington, Delaware

/s/ *Christopher M. Samis*
**WHITEFORD, TAYLOR & PRESTON LLC**
Christopher M. Samis (No. 4909)
The Renaissance Centre, Suite 500
405 North King Street
Wilmington, Delaware 19801-3700
Tel: (302) 357-3266
Fax: (302) 357-3288
Email: csamis@wtplaw.com

*Proposed Delaware Counsel for the Official Committee of Unsecured Creditors*

-and-

**SQUIRE PATTON BOGGS (US) LLP**
Norman N. Kinel (admitted *pro hac vice*)
Nava Hazan (admitted *pro hac vice*)
30 Rockefeller Plaza, 23rd Floor
New York, New York 10112
Tel: (212) 872-9800
Fax: (212) 872-9815
Email: norman.kinel@squirepb.com
nava.hazan@squirepb.com

-and-

**SQUIRE PATTON BOGGS (US) LLP**
Karol K. Denniston (admitted *pro hac vice*)
275 Battery Street, Suite 2600
San Francisco, California 94111
Tel:  (415) 954-0200
Fax:  (415) 994-6686
Email:    karol.denniston@squirepb.com

*Proposed Counsel for the Official*
*Committee of Unsecured Creditors*